486 F.2d 995
 6 ERC 1001, 3 Envtl. L. Rep. 20,660,
4 Envtl. L. Rep. 20,041
 NATIONAL HELIUM CORPORATION, Plaintiff-Appellee, and
Phillips Petroleum Company and Cities Service
Helex, Inc., Intervenor-Plaintiff-Appellees,
v.
Rogers C. B. MORTON, Secretary of the Interior, and Elburt
F. Osborn, Director, Bureau of Mines, Department
of the Interior, Defendants-Appellants.
 Nos. 73-1169, 73-1449.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 19, 1973.
 
 Raymond D. Battocchi, Atty., Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., Irving Jaffe, Acting Asst. Atty. Gen., Robert J. Roth, U. S. Atty., D. Kan., Morton Hollander and Irwin Goldbloom, Attys., Dept. of Justice, on the brief), for defendants-appellants.
 Robert L. Ackerly, of Sellers, Conner & Cuneo, Washington, D. C. (Emmet A. Blaes of Jochems, Sargent & Blaes, Wichita, Kan., Raymond S. E. Pushkar, of Sellers, Conner & Cuneo, Washington, D. C., Wendell J. Doggett, Gen. Counsel & Secretary, National Helium Corp., Houston, Tex., of counsel, on the brief), for plaintiff-appellee, National Helium Corp.
 William H. Allen, of Covington & Burling, Washington, D. C. (Joseph W. Kennedy, of Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., Eugene D. Gulland, of Covington & Burling, Washington, D. C.; R. Price Howard, Senior Counsel, Phillips Petroleum Co., Bartlesville, Okl., of counsel, on the brief), for intervenor-plaintiff-appellee, Phillips Petroleum Co.
 Daniel R. Hopkins, Oklahoma City, Okl. (William J. Sears, Oklahoma City, Okl., Mark H. Adams, Mark H. Adams, II, and William S. Richardson, of Adams, Jones, Robinson & Malone, Wichita, Kan., on the brief), for intervenor-plaintiff-appellee, Cities Service Helex, Inc.
 Before BREITENSTEIN, HILL and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This cause has been appealed on prior occasions. In National Helium Corporation v. Morton, 455 F.2d 650 (10th Cir. 1971), the district court, 326 F.Supp. 151, had ruled that helium purchase contracts entered into pursuant to the Helium Act, 50 U.S.C. Sec. 167 et seq. could not be terminated by the Secretary of the Interior without the filing by the Interior Department of an environmental impact statement in accordance with 42 U.S.C. Sec. 4321 et seq. This court affirmed that decision, holding that the Department was required to comply with this provision of the National Environmental Policy Act (NEPA). Following the filing of an environmental impact statement by the Department, the Secretary again terminated the helium purchase contracts and once again plaintiffs-appellees filed an injunction suit in the United States District Court for the District of Kansas. The district court again enjoined the Secretary. On this occasion it was due to the dissatisfaction of the court with the impact statement. There have been two other appeal proceedings presented to us. One of these involved the scope of the retrial-whether it was to be an agency review or a de novo hearing. The other had to do with efforts of plaintiffs-appellees to discover government documents.
 
 
 2
 The district court, 361 F.Supp. 78, filed the decision leading to the instant appeal on June 11, 1973. It again enjoined the Secretary of the Interior from terminating three of the helium purchase contracts. Although the Department had filed an impact statement the court ruled that it had failed to comply with the mandate of the National Environmental Policy Act of 1969; that the impact statement, if not deficient in scope, was essentially lacking in depth. At present, then, the primary issue before the court is whether the Department's impact statement or report was in accordance with the statutory standards and in accordance with this court's mandate in the prior case.
 
 
 3
 On the prior occasion and now the Secretary terminated the contracts pursuant to their express termination provisions. He did so on the basis that the helium program had been substantially carried out. The mentioned provisions authorize him to terminate when there has been a substantial diminution in helium requirements, discovery of large new helium resources or other changes of a similar nature.[1]
 
 
 4
 At the time that these contracts were entered into, the U.S. helium requirements amounted to 530 million cubic feet of helium per year. This requirement increased in subsequent years, but commenced to decline in 1967 and has declined every year since so that in the year 1970 the demand had decreased to 400 million cubic feet. An average of 3.126 billion cubic feet of helium had been purchased each year. In the years 1971-72 the demand diminished in substantial amounts and all of the purchases have decreased, although they continue to be in excess of two billion cubic feet annually. During this entire purchase period the government through the Bureau of Mines had purchased enough helium to meet all of its needs and has not needed to use the purchased helium. Furthermore, the government believes that it has much more of a supply than can possibly be used between now and 2000. It is estimated that it is six times as much as will be needed.
 
 
 5
 Following this court's decision the Interior Department proceeded at once to conduct a study leading to the preparation and filing of an environmental impact statement. The initial draft was submitted to interested parties, including the plaintiffs, and comments were received. These are included as part of the report of the Department. The final environmental statement was issued November 13, 1972. The hearing in the district court consisted of a judicial review of the administrative record. It was not a trial de novo. (This was in accordance with the adjudication of this court after the mentioned interlocutory appeal.) The proceedings in the district court were extensive as to the composition of the administrative record. Plaintiffs had full opportunity to express their views, and the court's opinion was thorough and exhaustive.
 
 
 6
 In its final decision the court ruled that it was limited to determining whether the agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. It concluded that the Department's effort in preparing the impact statement was an insufficient one which failed to come up to the mentioned standard in numerous respects. It characterized the statement as "feeble," "obviously incomplete," "appallingly deficient," "startling in its brevity and lack of depth," and, finally, said that the statement totally failed to consider the environmental impact of termination. The court disapproved the statement in its entirety and remanded the cause for further proceedings.
 
 
 7
 Reversal is demanded on the following grounds:
 
 
 8
 First, it is contended that there was a lack of jurisdiction for the district court to even entertain the case in view of the Supreme Court's recent decision (rendered since our last decision) in United States v. Students Chal. Reg. Agcy. Pro. (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).
 
 
 9
 Second, the environmental statement was valid and sufficient; the district court erred in condemning it.
 
 
 10
 Third, the Secretary complied with the procedural requirements of NEPA as well as with this court's mandate. Hence, there was no justification for issuing the injunction.
 
 
 11
 Fourth, the district court erred in considering grounds other than sufficiency of F.E.S. since it lacked authority to enjoin for any ground except noncompliance with NEPA.
 
 I.
 JURISDICTION
 
 12
 A. WHETHER THE AUTHORITY OF THE SECRETARY IS SUPERSEDED BY NEPA.
 
 
 13
 First we consider the renewed challenge to jurisdiction. As above noted, this question was determined adversely to the government in the early appeal. See 455 F.2d at 653-654. The government now urges that the Supreme Court's recent decision in United States v. Students Challenging Regulatory Agency Procedures, supra, has changed the applicable law and that this issue must be reexamined. In this recent case the Supreme Court reviewed the decision of the District of Columbia three-judge court which enjoined a proposed railroad rate increase of the Interstate Commerce Act. Under that Act a railroad is required to give at least 30 days notice for carrying out a proposed rate increase. During this period the Interstate Commerce Commission may, pursuant to Sec. 15(7) of the Act, suspend the operation of the proposed rate for a maximum of seven months pending an investigation and decision of the lawfulness of the new rates. The Interstate Commerce Commission refused to suspend the rate increase and the environmental issue arose from the fact that the increase involved a 2.5 percent surcharge on nearly all freight rates. Plaintiffs alleged that the modified rate structure would discourage the transportation of recyclable materials and promote the use of raw materials which compete with scrap material and would thereby affect the environment. The Court based its decision on Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), which had held that Congress had in the ICC Act vested exclusive power in the ICC to suspend rates pending final decision and had deliberately extinguished judicial power to grant this relief; the district court lacked jurisdiction to grant an injunction.
 
 
 14
 It seems apparent that the case at bar differs from the so-called SCRAP decision in that the Helium Act does not vest the Secretary with the same kind of regulatory authority as was present in the SCRAP case. The holding that NEPA did not subvert the power of the Interstate Commerce Commission was not surprising since the Commission is a tribunal in its own right with peculiarly exclusive authority within its sphere.
 
 
 15
 The SCRAP decision does create at least a shadow of doubt as to whether the Secretary's power was undermined by NEPA. The fact, however, that it gives pause is not enough because the differences between the two conditions are marked.
 
 
 16
 The district court held that additional bases of jurisdiction existed under 28 U.S.C. Sec. 1331 (federal question), Sec. 1361 (action to compel a federal officer to perform his duty), and Secs. 2201 and 2202 (declaratory judgments). Jurisdiction on other than NEPA grounds becomes important only if we find compliance with NEPA. This argument is superfluous since NEPA furnishes a jurisdictional base, and the case being properly in federal court it is there for all purposes. Hence, we have no concern over jurisdiction outside the NEPA base.
 
 B. CONTRACT TERMINATION-USE OF INJUNCTION
 
 17
 The trial court did not follow this court's mandate that the only issue giving the district court jurisdiction to entertain the injunction suit was the noncompliance with the requirement of an impact statement. We stated in our former opinion that the Secretary was not compelled to purchase any helium; that the matter was left to his discretion and he was within his rights in terminating the contracts. We adhere to these views.
 
 
 18
 We have fully considered the Supreme Court cases which prohibit injunctive relief against governmental officers on account of their upholding the rights of the government arising under a contract. Such a suit is distinguished by the Supreme Court from actions seeking compensations for an alleged wrong and are regarded as actions against the sovereign to which there has not been consent. See Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).[2]
 
 
 19
 It is fundamental that the Tucker Act which contains a limited consent of the United States to be sued does not authorize an action in injunction. See Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) and United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).
 
 
 20
 We view the action seeking to require the Department to file an impact statement to stand on a different footing in relationship to the sovereign immunity doctrine and the cited cases because the action merely seeks[3] to obtain compliance with the National Environmental Policy Act of 1969 and is not for the purpose of asserting and enforcing a private right. Also, if the impact statement is to be meaningful the requirement must be virtually absolute. Thus, we conceive of the review of the Secretary's action as being strictly limited to compliance with the requirement of the environmental impact statement. This, of course, includes consideration given to the statement by the Secretary, for if he failed to consider it his action would assume arbitrariness and capriciousness.
 
 
 21
 Efforts to enjoin the Secretary from terminating the contracts for an indefinite period of time must, of course, fail. We reject the plaintiffs' argument that review of the termination is permissible under the Administrative Procedure Act. We fail to perceive any violation of the 1960 Helium Act Amendments.
 
 II.
 
 22
 Next we consider whether the Secretary and the Department fulfilled the requirements of Sec. 4332. A primary issue is the scope and the test of judicial review. First, what is the standard to be used in such review and, second, whether the court correctly assessed the agency's action in the light of the NEPA requirements.
 
 
 23
 A. THE STANDARD TO BE APPLIED.
 
 
 24
 The specific procedural requirements of NEPA are delineated in 42 U.S.C. Sec. 4332. Section 4332(2) (A)-(H) imposes specific procedural duties on federal agencies, one of which is the duty of preparing a detailed impact statement to accompany any recommendation for a major federal action significantly affecting the environment. The requirements of this impact statement contained in Sec. 4332(2)(C) include five specific areas to be covered in the impact statement:
 
 
 25
 (i) the environmental impact of the proposed action,
 
 
 26
 (ii) any adverse environmetal effects which cannot be avoided should the proposal be implemented,
 
 
 27
 (iii) alternatives to the proposed action,
 
 
 28
 (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 
 
 29
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 30
 The trial court employed the "arbitrary and capricious" standard of Sec. 706 of the APA.[4] This sets aside the action if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. The trial court purportedly relied on the Supreme Court's decision in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-414, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). This case did not, however, involve the preparation of an environmental impact statement. This was a review of the decision of the Secretary of Transportation in respect to the building of a highway through a park. This was in truth "agency action." The decision of the Secretary in Overton Park was concerned with the Department of Transportation Act of 1966 and the Federal-Aid Highway Act of 1968. In assessing the adequacy of the impact statement, we are not here reviewing, as we said above, agency action within the meaning of Sec. 706 of the APA. Rather, we are concerned with the NEPA requirement which is, to be sure, a prerequisite for agency action but is not agency action itself. The trial court's conclusion that it was required by Overton Park to apply the arbitrary and capricious standard was, in our view, erroneous.
 
 
 31
 The better reasoned decisions have required an objective good faith effort to comply with the statutory procedural requirements. Other than that, the courts have demanded that the agency do more than mechanically pursue the procedural standards. Thus, in Calvert Cliffs' Coord. Com. v. United States A. E. Com'n, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971), the court added to the good faith standard by saying that the agency must comply with the procedural requirements to the fullest extent possible. The same Circuit in Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827 (1972), has said that the procedural requirements are not intended to be a straitjacket or to demand what is, fairly speaking, not meaningfully possible.
 
 
 32
 Finally, the most recent decision of the D. C. Circuit, Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission, D.C.Cir., 481 F.2d 1079, 1973, expounds the standards more clearly than earlier decisions:
 
 
 33
 It is apparent, however, that the Commission seeks to avoid issuing its forthcoming "environmental survey" as an impact statement under Section 102, not out of any desire to circumvent NEPA's procedural requirements, but rather because of a fear that Section 102's requirements as to the contents of an impact statement are so strict, particularly as to the need for "detail" in the statement, that any Commission attempt to issue its environmental survey as a NEPA statement would be doomed to failure. While we do not altogether understand the Commission's fears, we feel they are based on certain misapprehensions as to what NEPA requires.
 
 
 34
 ******
 
 
 35
 * * *
 
 
 36
 Accordingly, if the Commission's environmental survey is prepared and issued in accordance with NEPA procedures, and if the Commission makes a good faith effort in the survey to describe the reasonably foreseeable environmental impact of the program, alternatives to the program and their reasonably foreseeable environmental impact, and the irreversible and irretrievable commitment of resources the program involves, we see no reason why the survey will not fully satisfy the requirements of Section 102(C).
 
 
 37
 The environmental impact statement should be placed in perspective. The relevant provisions bring environmental factors into the agency decision-making placing them on an equal footing with economic, technical and other considerations. Also, this environmental impact statement serves as source material for the head of the agency, the Congress, the President and the public. See Calvert Cliffs', supra. If the agency had failed altogether to follow out the procedure required by NEPA, the arbitrary and capricious standard might well apply. That is not our present problem. The rule of reason is a more appropriate standard where the sufficiency of the statement is being tested.[5]
 
 
 38
 In summary, then, our view is that the review of FES is limited to the following:
 
 
 39
 (1) Whether FES discusses all of the five procedural requirements of NEPA.
 
 
 40
 (2) Whether the environmental impact statement constitutes an objective good faith compliance with the demands of NEPA.(3) Whether the statement contains a reasonable discussion of the subject matter involved in the five required areas.
 
 III.
 
 41
 The remaining issue and the crucial one in the case pertains to the adequacy of the Final Environmental Statement testing it by the five prescribed areas set forth in Sec. 4332(2)(C), supra.
 
 
 42
 As a preface, we note that there is some dispute as to whether the comments which were given by the various agencies and institutions to which the draft environmental statement were sent are to be regarded as a part of the Final Statement. The Department solicited, received and considered comments from many interested parties, including the plaintiffs-appellees. They contend that the various comments are not to be considered as a part of the Final Statement. However, we disagree. These were incorporated into the Final Statement and were available for consideration by all interested parties and are available for the information of the President, the Congress and the public. Those commenting included the various agencies within the Interior Department and ten other federal agencies, including the National Science Foundation, Atomic Energy Commission, National Aeronautics and Space Administration and the Environmental Protection Agency. In addition, there were comments of three states, various scientific groups and a number of business and educational institutions. Moreover, the Final Environmental Statement shows that the comments were considered by the authors of the statement. The cases hold that the comments are to be regarded as an integral part of the statement. See Con. Council of N. Car. v. Froehlke, 340 F.Supp. 222 (M.D.N.C.1972), and Environmental D. Fund, Inc. v. Corps of Eng. of United States Army, 342 F.Supp. 1211, 1217 (E.D.Ark.W.D.1972).
 
 
 43
 In general, the district court found fault with the fact that the impact statement did not deal adequately with economic feasibility. In our judgment, however, this subject was treated sufficiently insofar as it affected the environmental consequences which, after all, are the important factors to be considered. The role of the Final Environmental Statement is to enunciate the environmental considerations for the benefit of the decision-makers.
 
 
 44
 We are of the opinion that consideration of the five subjects prescribed by the statute was sufficient.
 
 
 45
 (i) Environmental impact of the proposed action.
 
 
 46
 There is no contention that the loss of helium, should it be lost, will affect the environment. It is, after all, a colorless, odorless, nonflammable, inert gas. Therefore, the matter to be weighed, and which the impact statement did weigh in accordance with our mandate in the previous case, is the secondary effect, namely, loss of the resource. As we have noted above, the supply which the government has in storage is sufficient to the year 2000 and perhaps beyond. Continued purchases by the government would at best extend the inventory for a period of from four to fourteen years. Thus, it would not solve the problem of the future use of it. The Final Environmental Statement considers the recovery of helium from the atmosphere. It considers the amount of electrical power which would be required and the effects of the generation of such power on air and thermal pollution. It notes that the extent of use of helium beyond the year 2000 is conjectural and speculative, and thus the effect on the atmosphere of recovering the helium is itself conjectural. For our purpose the statement took into consideration all of the possibilities and it was not required to do more than this.
 
 
 47
 (ii) Adverse environmental effects which are unavoidable.
 
 
 48
 The statement points out the future problems of recapturing the lost helium if it is necessary.(iii) Alternatives to the proposed action
 
 
 49
 The statement considers several alternatives, including reliance on the normal market process, expansion of the helium program by legislative action, use of leaner gases and recapture from the atmosphere. The discussion in our view satisfies the present requirement and the statement did not have to dwell on the imaginary horribles posed by the plaintiffs.[6]
 
 
 50
 (iv) The relationship between local short-term uses of man's
 
 
 51
 environment and the maintenance and enhancement of
 
 
 52
 long-term productivity.
 
 
 53
 That which appears in parts i, ii and iii above considers the present question. The statement took into account the known sources and supplies together with the possible uses such as generation and transmission of electrical power for nuclear reactors, for the space program, for levitation systems of mass transportation and for cyrogenics.
 
 
 54
 We disagree with the trial court's finding that the impact statement's failure to consider the alternative of making the helium purchase program financially self-sustaining was a fatal defect. Such an alternative is somewhat obvious in that it would be a continuation of the present purchase program. This alternative is discussed in the statement. The impact of this alternative is implicit in the discussion of the several alternatives contained in the Final Statement.
 
 
 55
 (v) Any irreversible and irretrievable commitments of
 
 
 56
 resources which would be involved in the proposed
 
 
 57
 action should it be implemented.
 
 
 58
 The termination which is the proposed action is reversible by continuation of one or more of the contracts in modified form or by the negotiation of new contracts or by congressional action. Should the contracts be cancelled, and should the company shut down their separation plants, the helium which is now preserved would, of course, be lost. Beyond this, hard and fast predictions about the effect of termination of helium purchases on the technology which we would have in the Twenty-First Century would be nothing more than speculation. We consider the subject matter sufficiently discussed in the Final Statement. There is enough there to alert the decision-makers and others concerned.
 
 
 59
 Apart from the five categories, Sec. 4332(2)(C) requires that the Department "consult with and obtain the comments of" federal agencies having jurisdiction or special expertise with respect to any environmental impact involved in a contemplated action. The impact statement meets the standard prescribed by Sec. 4332(2)(C) in this regard, when viewed in light of the "rule of reason" we have here approved. The requirement should not be viewed as necessitating that the completion of an impact statement be unreasonably or interminably delayed in order to include all potential comments or the results of works in progress which might shed some additional light on the subject of the impact statement. Such a result would often inordinately delay or prevent any decision in environmental cases. The courts should look for adequacy and completeness in an impact statement, not perfection. E. D. F. v. Corps of Engineers, 470 F.2d at 297. In this particular case this court expressed the opinion that an ultimate resolution of the issues involved in this case was urgent and should be expedited. 455 F.2d at 657. The initial impact statement was not issued until May 16, 1972, and the Final Statement issued on November 13, 1972. To have delayed the statement any longer would have flown in the face of what we considered a reasonable time for preparation of the statement.
 
 
 60
 It is also contended by the parties (appellees) that the statement is defective because of failure to state the purpose of the contemplated action. Section 4332(2)(C) does not explicitly require that the purpose of the contemplated government action be spelled out. While in many types of governmental action the exact purpose of the action might be unclear and thus lead to confusion were it not stated, this is not such a case. The self-evident purpose of the proposed action here is to terminate the continued purchase of helium reserves which the Secretary regards as economically superfluous and beyond the goals set forth in the 1960 Amendments to the Helium Act.
 
 
 61
 We see no merit in the further argument of the appellees that the real reason for contract termination was to effect a financial saving and that the Office of Management and Budget dictated cancellation. The Secretary terminated the contracts and the Office of Management and Budget does not have authority to dictate to the Secretary the decision that he is to make in connection with a contract entered into and terminable by him.[7]
 
 
 62
 Applying the rule of reason which is enunciated in the cases, we conclude that the statement is fully acceptable. It adequately discusses future needs and future supplies. It weighs the costs now as opposed to the future. It is a comprehensive and thorough document. We disagree with the derogatory comments of the parties and the district court regarding it.
 
 
 63
 Much time and opportunity have been extended to the appellees. There has been much delay as a result and we repeat what we have said in our prior decisions that inasmuch as the decision has been made the termination should be carried out without delay.
 
 
 64
 Accordingly, the judgment of the district court is reversed and the cause is remanded with directions to dismiss the action.
 
 
 65
 BREITENSTEIN, Circuit Judge (concurring).
 
 
 66
 I concur in the result. It may be that my differences with the majority go to form rather than substance.
 
 
 67
 The decision in United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254, SCRAP, does not affect federal jurisdiction in the instant case because we have no concern with any federal statute conferring exclusive jurisdiction on an agency. The argument of the Government is that this case involves federal contracts and that the Tucker Act, 28 U.S.C. Secs. 1346(a)(2) and 1491, is the only statute which gives federal courts jurisdiction over government contract cases. In the first place, this suit does not arise out of any contract. It is concerned with compliance with the National Environmental Policy Act of 1969, NEPA, 42 U.S.C. Sec. 4321 et seq. In the second place the Tucker Act does not equate with the statute giving the Interstate Commerce Commission exclusive power to suspend rates.
 
 
 68
 The general standard of judicial review of agency actions is found in the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A). The action is set aside if it is arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413-414, 91 S.Ct. 814, 28 L.Ed.2d 136. The key phrase in Sec. 706 is "agency action." NEPA directs that "to the fullest extent possible * * * all agencies of the Federal Government shall * * * include in every * * * major Federal action(s) significantly affecting the quality of the human environment, a detailed statement by the responsible official" covering stated subject areas. NEPA alters the decisionmaking process of the federal agencies and brings environmental factors to an equal footing with economic, technical, and other traditional considerations, all of which must be balanced by the decision-maker.
 
 
 69
 The issue of scope of judicial review must be divided into two parts: first, the review of the Final Environmental Statement (FES), second, the review of the action of the Secretary terminating the contracts. See Wyoming Outdoor Coordinating Council v. Butz, 10 Cir., 484 F.2d 1244, p. 1249, n. 5. I believe that different standards apply to each part.
 
 
 70
 I reject, and I believe that the majority opinion rejects, the apparent holdings of the Eighth and Fourth Circuits that an environmental statement is judicially reviewable on its merits to determine sufficiency. See Environmental Defense Fund v. Corps of Engineers of United States Army, 8 Cir., 470 F.2d 289, 298, and Conservation Council of North Carolina v. Froehlke, 4 Cir., 473 F.2d 664, 665. I believe that judicial review of an impact statement is limited to a determination of whether the statement is a good faith, objective, and reasonable presentation of the subject areas mandated by NEPA. The courts should not second-guess the scientists, experts, economists, and planners who make the environmental statement.
 
 
 71
 In my opinion FES is an excellent job which fully complies with both the letter and the spirit of NEPA. It is a comprehensive study which displays objectivity and good faith. Its discussion reasonably presents the environmental effects, the alternatives, the relationship between short-term and long-term uses of man's environment, and the possible economic effects.
 
 
 72
 This brings me to the second question, judicial review of the Secretary's action terminating the contracts. Here the standard is that provided by the APA. The statement of the Secretary at termination of the contracts shows that in accordance with NEPA he carefully reviewed FES. His action was not a mechanical compliance with NEPA but rather a full consideration of FES with an understanding and reasonable application of its comprehensive study. He balanced the environmental factors with the other pertinent factors. His final action was neither arbitrary, capricious, nor an abuse of discretion. Accordingly, the district court's injunction was improper.
 
 
 73
 One other point should be mentioned. Neither the statements of the trial court nor of this court determine the contractual rights of the parties, whatever they may be. Those are for consideration by the Court of Claims under the Tucker Act.
 
 
 
 [1]
 In our prior opinion, 455 F.2d at 653, we said:
 Under the Act the Secretary is not required to purchase any helium. The entire matter is left to his discretion. In deciding to terminate the contract the Secretary stated that the basic purposes of the Act had been fulfilled, that is that the 25-year purchase program envisioned by the Act was unnecessary because as of the time of termination his estimates showed that there was enough helium in storage to fulfill government requirements through 1995. The Secretary notified the companies on January 26, 1971, that the contracts would be terminated effective March 27, 1971. In his letter he stated that there had been a diminution in the requirements of helium for essential governmental activities, and that there had been new discoveries since the execution of the contract, which discoveries had provided large sources of available helium if more of the gas "is required for essential government activities than is now in storage or will be recovered in government plants."
 
 
 [2]
 In distinguishing between actions seeking damages and suits like the case at bar, the Supreme Court said:
 But the reasoning is not applicable to suits for specific relief. For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, "the interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief. * * *"
 337 U.S. at 704, 69 S.Ct. at 1468. See also some of the numerous other cases which support the Larson holding: Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).
 
 
 [3]
 Since the defendants are engaged in upholding a public right they can only be acting pursuant to public laws
 
 
 [4]
 National Helium Company, et al. v. Morton, 361 F.Supp. 78, filed June 11, 1972 (D.Kansas)
 
 
 [5]
 The cases cited by the trial court as calling for a "careful review" of agency action in environmental cases do not support the trial court's use of the "arbitrary and capricious" standard in assessing the factual adequacy of an impact statement. Calvert Cliffs' did not involve the review of an impact statement. Scenic Hudson was concerned with the adequacy of an agency's decision, not the adequacy of the impact statement contributing to that decision. N.R.D.C. v. Morton dealt with the legal question of whether an agency's impact statement could exclude environmental alternatives merely because the agency had no specific authority to implement them. E.D.F. v. Corps. of Engineers is somewhat confusing in its discussion of the standard of review. Careful examination of the case reveals, however, that the language about using the "arbitrary and capricious" test refers to review of agency decisions rather than the factual sufficiency of impact statements. The court actually adopted the "rule of reason" test which we have here approved when it assessed the factual sufficiency of the agency's compliance with Sec. 102(2) (D) of NEPA. 470 F.2d at 297. A similar test would presumably be applied by that court in assessing the factual adequacy of other procedural requirements under Sec. 102, including preparation of the impact statement
 
 
 [6]
 Cf. Natural Resources Defense Council, Inc. v. Morton, supra
 
 
 [7]
 Walter Holm & Company v. Hardin, 145 U.S.App.D.C. 347, 449 F.2d 1009, 1013 (1971)