505 F.2d 217
 William R. BURKETT et al., Appellants, Petitioners,
v.
Stephen S. CHANDLER, United States District Judge for the
Western District of Oklahoma, Respondent.
David HALL and Jo Evans Hall, Plaintiffs-Appellees,
v.
William R. BURKETT, United States Attorney for the Western
District ofOklahoma, and Clyde L. Bickerstaff,
Oklahoma District Director,
InternalRevenue Service,
Defendants-Appellants.
 Nos. 74-1120, 74-1297 and 74-1298.
 United States Court of Appeals, Tenth Circuit.
 Argued Sept. 12, 1974.
Decided Nov. 7, 1974, Rehearing Denied Jan. 29, 1975.
 
 Neil H. Koslowe, Atty., Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., and Leonard Schaitman, Atty., Dept. of Justice, on the brief), for petitioners-appellants and defendants-appellants.
 Walter A. Steele, Denver, Colo., for respondent and appellee, Stephen S. Chandler.
 Before BREITENSTEIN, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is an appeal together with extraordinary writs which seek to set aside judgments disbarring from the practice of law and citing for contempt the United States Attorney for the Western District of Oklahoma and several of his assistants. The cases in this court arise out of a Western District of Oklahoma proceeding, No. 74-30-C, in which David Hall, Governor of Oklahoma, and his wife, Jo Evans Hall, were plaintiffs. It sought injunctions against the United States Attorney and other federal officers.
 
 
 2
 The underlying controversy giving rise to all of this litigation arose from an investigation by the Justice Department and the Director of Internal Revenue of possible income tax evasion by Governor Hall. Dorothy Pike was an important witness in behalf of the government. Allegedly, under the auspices of the Internal Revenue Service, she was secreted in Arlington, Virginia. Her whereabouts was not known to either the Halls or to Judge Chandler. Her specific whereabouts was at first unknown to Mr. Burkett, but Judge Chandler believed that the information was accessible to Mr. Burkett and that he was not cooperating. Thus, the bone of contention was where she was, whether she was subject to having her deposition taken and whether the United States Attorney could and would produce her.
 
 
 3
 No. 74-30-C has generated several consolidated matters which are presently before us. Number 74-1120 is a petition for writ of mandamus; Number 74-1297 is an appeal from the judgments of disbarment; and Number 74-1298 is an appeal from an order to show cause for contempt.[1]
 
 THE PROCEEDINGS IN DISTRICT COURT
 
 4
 Number 74-29-C was a petition to perpetuate the testimony of one Dorothy Pike who had been Governor Hall's secretary. Number 74-30-C essentially sought to enjoin interference with the efforts of Hall to communicate with Dorothy Pike. The definitive allegation was invasion of the Halls' civil rights.
 
 
 5
 Number 74-30-C, the injunction action, was assigned to Judge Chandler who appears as an appellee-respondent. The main effort of the several hearings was to locate and bring the witness Dorothy Pike before the court for the giving of testimony.
 
 
 6
 On January 30, 1974, an application was made by the United States Attorney and the Director of Internal Revenue Service for writ of prohibition and mandamus. This court ordered that a writ issue directing the respondent to show cause within 10 days why the writ should not be made permanent and that pending final disposition of the petition further proceedings in the district court were to be stayed.
 
 
 7
 On March 11, 1974, Judge Chandler issued the judgments of disbarment against the United States Attorney and his assistants, the other individual appellants (in Misc. No. 7). That judgment charged that appellants had wilfully and corruptly aided and abetted and conspired with Burkett to conceal the whereabouts of Dorothy Pike from the court and from the United States Marshal; that Burkett had committed perjury at one of the hearings; and that the other appellants had known of this and had failed to reveal it to the court and were, on this account, guilty of misprision of a felony. A further charge in the disbarment judgment was that the appellants had conspired to violate the civil rights of Governor Hall and his wife and had concealed from the court an application for writ of prohibition and mandamus (the one filed in this court on January 30, 1974).
 
 
 8
 Also, on March 11, 1974, Judge Chandler issued an order directed to the appellants to show cause why they should not be punished for civil and criminal contempt for having obstructed justice by concealing the whereabouts of Mrs. Pike, for having committed perjury and for having been guilty of misprision of a felony.
 
 
 9
 On March 12, 1974, an application for writs of prohibition and mandamus were filed in this court challenging the disbarment and contempt orders. On that same day this court issued its order staying the order of disbarment until further order. On March 21, 1974, a clarifying order was issued providing that the stay of March 12 applied also to the citation for contempt.
 
 
 10
 The issue presented to us is whether the actions of the district court disbarring the appellants and charging them with contempt were valid. Appellants-petitioners seek to set aside the orders saying they are invalid and unconstitutional. The text of the judgment of disbarment is set forth in an appendix to this opinion.
 
 PRIOR PROCEEDINGS IN THIS COURT
 
 11
 On February 1, 1974, in No. 74-1013, a temporary order was entered by this court staying the taking of the deposition of Dorothy Pike at the time and on the date specified in the court order until further order or this court. This pertained to Cause No. 74-30-C in the district court. At the same time, an order was entered directing the respondent to show cause why the writ should not be made permanent. Subsequently, a response was filed in accordance with the said order. The respondent also sought to clarify its position by a letter which explained that the district court had not exercised unlimited jurisdiction in the premises, but had merely undertaken to hear the application for a temporary injunction together with the defendants' motion to dismiss.
 
 
 12
 On June 7, 1974, following oral arguments, we issued a per curiam order in Cause No. 74-30-C. A copy of this order is appended hereto. It recites that the above numbered district court action sought to enjoin the United States Attorney, the Director of Internal Revenue and others from conducting an investigation of the Honorable David Hall, Governor of Oklahoma, and that an effort had been made in these proceedings to take the deposition of Dorothy Pike, former secretary to Governor Hall. The essential holding was that the district court lacked jurisdiction to entertain this action since it sought to enjoin public officials from carrying out their duties; that it was in effect then a suit against the United States. The writ of prohibition was issued. The perpetuation action, No. 74-29-C, was not included in the writ.
 
 
 13
 THE EVIDENCE BEFORE JUDGE CHANDLER ANTECEDENT TO THE ISSUANCE OF THE DISBARMENT AND CONTEMPT ORDERS
 
 
 14
 On January 17, 1974, Mr. Burkett in testimony before Judge Chandler denied that the defendants in No. 74-30-C were interfering with the plaintiffs' efforts to see Mrs. Pike.[2] According to Burkett, the government's access to Dorothy Pike was through the latter's sister in Missouri.
 
 
 15
 Although Judge Chandler did not order the United States Attorney's office to produce her, he made 'suggestions' several times that the government agents cooperate in producing her or in obtaining the information as to her whereabouts so that the plaintiffs could proceed. The United States Attorney's position was that he would not voluntarily assist in locating her.
 
 
 16
 On January 18 there was another hearing, and here again Judge Chandler repeatedly urged the parties to cooperate in getting the testimony of Dorothy Pike. The Judge ordered that a subpoena issue for her deposition. He suggested that counsel call her up and ask her to appear. Burkett stated his position as being that the government objected to subpoenaing Mrs. Pike to testify in the proceeding and before the court. The court continued to reiterate its hope that counsel would simplify the matter or cooperate in requesting Mrs. Pike to come into court. The telephone call suggested by the Judge was not completed.
 
 
 17
 On January 21 another hearing was held. At that time Judge Chandler suggested that an attempt to prevent production of the witness was either unethical or in violation of the law.[3]
 
 
 18
 As a next step, Judge Chandler issued a new subpoena and requested the cooperation of all agencies in locating her.[4] Mr. Burkett reminded the court that he objected to the proceedings. His request for a stay was, however, denied.
 
 
 19
 The following day Judge Chandler announced that the subpoena that he had ordered previously had not issued and he produced a new subpoena, handed it to the Marshal and directed him to serve it. Judge Chandler at the same time declared that anyone knowing the whereabouts of Mrs. Pike had the legal and ethical duty to advise the Marshal. On January 28, 1974, the Judge ordered the parties to assist in the search for mrs. Pike. On that same day Mr. Burkett sent a memorandum to Mr. Bickerstaff, the Oklahoma Internal Revenue Director, stating that the Internal Revenue Service employees should be questioned as to her whereabouts and that he (Burkett) should be advised in writing as to the results of the inquiry. Soon thereafter, Mrs. Pike was found in Arlington, Virginia and the information was given to the Marshal. She was served a subpoena in Arlington at 4:00 p.m. on January 29. Meanwhile, Mr. Burkett sought relief by extraordinary writ in this court. A copy of this latter petition was given to Judge Chandler.
 
 
 20
 A stay was issued by this court and we ordered respondent to show cause why the writ should not be made permanent. Judge Chandler was concerned that he had not been notified of the filing of the petition and that this court had not been notified by Burkett of Judge Chandler's desire to be heard. Mr. Burkett stated that there had not been a hearing and he had not made any oral presentation.
 
 
 21
 The judgments of disbarment against the United States Attorney and his assistants followed on March 11, 1974. Subsequently, the order of this court in No. 74-1013 holding that the district court lacked jurisdiction to proceed and making permanent the preliminary writ was entered. This, as has been previously explained, pertained to the deposition proceedings of Dorothy Pike.
 
 I.
 THE DISBARMENT PROCEEDINGS
 
 22
 It is apparent from the foregoing that a legal tug-of-war was taking place between Judge Chandler and the United States Attorney. It seems plain that the whereabouts of Dorothy Pike was ascertainable because once the Judge ordered something more than cooperation her whereabouts suddenly became known. The question then is whether the failure of Mr. Burkett to cooperate fully justified the imposition of the sanctionsdisbarment and contempt.
 
 
 23
 Defendants contend that the disbarment proceedings were void because there was neither a formal complaint, prior notice given, nor a hearing nor opportunity to be heard. Secondly, they contend that the evidence in the record is insufficient to support the judgment.
 
 
 24
 We first consider the contention that the procedure was invalid. The early decision of the Supreme Court in Exparte Robinson, 86 U.S. (19 Wall.) 505, 22 L.Ed. 205 (1874), laid down the requirement that a judgment of disbarment cannot be entered without giving the attorney notice of the grounds of complaint and an opportunity to explain and defend. The Supreme Court there said:
 
 
 25
 Before a judgment disbarring an attorney is rendered, he should have notice of the grounds of complaint against him and ample opportunity of explanation and defense . . .. There may be cases, undoubtedly, of such gross and outrageous conduct in open court on the part of the attorney as to justify very summary proceedings for his suspension or removal from office; but even then he should be heard before he is condemned . . .. The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights.
 
 
 26
 86 U.S. at 512-513.
 
 
 27
 The decisions of this court cited by Judge Chandler in his brief, In re Carroll, 416 F.2d 585 (10th Cir. 1969), cert. denied, 396 U.S. 1011, 90 S.Ct. 570, 24 L.Ed.2d 503 (1970) and Howard v. United States District Court, Dist. of Colorado, 318 F.2d 521 (10th Cir. 1963), are cases in which the attorney had a full hearing prior to the taking of disciplinary action. Cf. In re Ryder, 263 F.Supp. 360 (E.D.Va.), aff'd, 381 F.2d 713 (4th Cir. 1967). In the Ryder case the attorney had been guilty of an effort to conceal evidence which would have convicted his client of robbery. The facts in Ryder came out in a hearing in the main case. To prevent the continuation of the attorney in the case, the suspension order was issued. Ryder thus has nothing in common with the case at bar.
 
 
 28
 The Carroll and Howard decisions recognize the necessity for notice and hearing as prerequisites to the validity of disbarment proceedings. So also the more recent decision of the Supreme Court in In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) demands that there be notice of the alleged professional misconduct as does Committee on Professional Ethics & Griev. v. Johnson, 447 F.2d 169 (3rd Cir. 1971). We must conclude that the disbarment judgments were procedurally deficient and on that account were invalid.[5]
 
 
 29
 We need not and do not consider the question whether the court's jurisdiction over the case empowered it to disbar the appellants or to hold them in contempt for failure to comply with court orders or requests. We do not have to reach it because the facts fail to establish that Mr. Burkett's conduct constituted the transgressions which the court found and the facts do not call for the sanctions which were imposed, and we now proceed to consider that.
 
 
 30
 We are mindful that the proceedings giving rise to the suit No. 74-30-C were adversary in the extreme. On the one hand, Governor and Mrs. Hall were seeking to utilize the process of the federal court to forestall or overcome an impending income tax investigation. On the other hand, the United States Attorney zealously sought to block these efforts. Judge Chandler was undoubtedly sincere in believing that an injustice was threatened but the action that he took was excessive and unwarranted.[6] We note that there is far less basis for subjecting the Assistant United States Attorneys to the contempt and disbarment sanctions than exists as to Mr. Burkett, so if the proceedings as to appellant Burkett fail those against the others follow.
 
 
 31
 First, Judge Chandler found that the attorney had wilfully and corruptly conspired to conceal the whereabouts of Dorothy from the Marshal after the court had admonished them to ascertain and disclose her address and had ordered that a subpoena be served upon her.
 
 
 32
 At this point Judge Chandler had sought cooperation and the United States Attorney maintained that the court lacked jurisdiction to entertain the suit, a conclusion which was later borne out by our decision of June 10, 1974. The record fails to establish that an order was given or that the ottorneys either concealed or conspired to conceal the whereabouts of Mrs. Pike from the Marshal following the exhortations or solicitations of the court.
 
 
 33
 On January 28 Judge Chandler ordered the appellants to assist in locating Mrs. Pike. This was obeyed. Immediately after this order, they did indeed aid in locating her.
 
 
 34
 We have to conclude that prior to January 28 the 'orders' or Judge Chandler were not orders at all to assist in location of the witness. They were no more than requests for cooperative effort. These are not necessary predicates for disbarment or contempt,
 
 
 35
 Second, Judge Chandler found that the assistants wilfully and corruptly aided and abetted Burkett in concealing the whereabouts of Dorothy Pike. It follows from our analysis and conclusion as to the insufficiency of the evidence against Burkett that the insufficiency is even more marked as to the Assistant United States Attorney.
 
 
 36
 Third, Judge Chandler found that Burkett committed perjury in testifying that neither he nor the Internal Revenue Service knew the whereabouts of Mrs. Pike. Burkett made clear in this testimony that he did not know the whereabouts of Dorothy Pike but he acknowledged that the Internal Revenue Service had a contact with her through her sister who lived in Southwest City, Missouri. From everything that appears in the record, this statement is true. There may have been non-cooperation, but no evidence that Burkett committed perjury.
 
 
 37
 Fourth, Judge Chandler found that the assistants knew of Mr. Burkett's failure and were accessories after the fact. This must be also rejected. It is tenuous and frivolous.
 
 
 38
 Fifth, Judge Chandler found that the accused attorneys conspired to injure Governor and Mrs. Hall's exercise of enjoyment of free rights.
 
 
 39
 The only evidence offered by the Halls in support of this civil rights contention was the testimony of Mr. Burkett, a newspaper article and a letter from Burkett to a state attorney requesting the state attorney to quash a subpoena for Mrs. Pike. The most that can be said of this is that Burkett and his assistants moved to thwart the efforts of the Halls to use the civil process of the United States court to advance their interest in avoiding an indictment. In performing these official functions, Burkett and his aides were not guilty of violating the Hall's civil rights.
 
 
 40
 Sixth, Judge Chandler found that the appellants conspired to conceal from the court that an application for a writ of prohibition was to be filed and presented to this court on January 30, 1974, after the court had ordered that he and Governor and Mrs. Hall be notified of any such application. Admittedly, this was a request and not an order, and in any event Judge Chandler notified the court that he intended to represent himself. There is not any semblance of prejudice which resulted from the failure of Burkett to notify the judge of this fact, and in any event Mr. Burkett was never given access to and had no opportunity to communicate with the judges of this court.
 
 II. THE CONTEMPT CITATIONS
 
 41
 We next consider Judge Chandler's order of March 11, 1974, ordering the appellants-petitioners to show cause in writing why they should not be punished for both civil and criminal contempt. In passing, we note that this is not a final order within the meaning of 28 U.S.C. 1291. Since there has not been a final adjudication of contempt or a sentence, the appeal remedy is not available. See 9 J. Moore, Moore's Federal Practice 110.13(4) (1970). See also, Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); SEC v. Naftalin, 460 F.2d 471 (8th Cir. 1972); Hyde Construction Co. v. Koehring Co., 348 F.2d 643, 647 (10th Cir. 1965), rev'd on other grounds, 382 U.S. 362 (1966). Cf. Massengale v. United States, 278 F.2d 344 (6th Cir. 1960) re necessity for punishment.
 
 
 42
 However, the matter is before us on the writ of mandamus, No. 74-1120, as well as appeal. We recognize that this writ is not to be used as a substitute for an appeal. See Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); In re Chicago, R.I. & Pacific Ry., 255 U.S. 273, 275-276, 41 S.Ct. 288, 65 L.Ed. 631 (1921); In re Tiffany, 252 U.S. 32, 40 S.Ct. 239, 64 L.Ed. 443 (1920); Erie Bank v. United States Dist. Court for Dist. of Colo., 362 F.2d 539, 540 (10th Cir. 1966). We consider circumstances here to be exceptional and justifying entertaining the mandamus. See Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).
 
 
 43
 The order to show cause stems from the identical conduct that Judge Chandler relied on in the disbarment proceedings, and there is no necessity for repeating the evaluations already given. We merely say that the dearth of evidence in support of the adjudications is so plain that the accused attorneys are not to be subjected to meaningless procedure in connection with these contempt citations. It would be time consuming, expensive and would hinder performance of official duties. In addition, further proceedings would continue the turmoil. It is our opinion in view of this that the mandamus is an appropriate remedy here.
 
 
 44
 In United States v. Hemphill, 369 F.2d 539 (4th Cir. 1966) the federal district judge had ordered the Secretary of Labor to answer interrogatories in an enforcement proceeding under the Fair Labor Standards Act. The Court of Appeals there held that compelling the Secretary of Labor to respond would impose great hardship and little countervailing value, and that it was proper for the Court of Appeals to issue the writ. The same is true here.
 
 
 45
 We repeat that we have not condoned refusal to obey an incorrectly entered order. Cf. Hyde Construction Co. v. Koehring Co., supra. We will meet this issue if and when there exists a need to do so.
 
 
 46
 Viewing the record as a whole, we conclude that while Mr. Burkett was unenthusiastic in his responses to the suggestions and exhortations of Judge Chandler to cooperate, we find no evidence establishing contemptuous refusal to obey specific orders and find no evidence that Burkett Usled the court or failed in any obligations to serve the court. The lack of responsiveness to suggestions does not suffice.
 
 
 47
 Accordingly, then, since there is a dearth of evidence to support the allegations of the order to show cause, the writ must issue.[7]
 
 
 48
 It is the order of this court that No. 74-1297 be reversed and remanded with directions to appellee, Judge Chandler, to vacate and set aside the disbarment judgments against the several appellants. It is the further order of the court that the writ of mandamus presented to us in No. 74-1120 be made final and absolute and that the order or orders to show cause why petitioners should not be held in contempt be vacated, set aside and held for naught.
 
 APPENDIX A
 
 49
 MAY TERM-- May 28, 1974 Before Honorable Delmas C. Hill, Honorable Robert H. McWilliams and Honorable William E. Doyle, Circuit Judges
 
 
 50
 WILLIAM R. BURKETT, etc., et al., Petitioners, v. STEPHEN S. CHANDLER, United States District Judge for the Western District of Oklahoma, Respondent.
 
 No. 74-1013 June 7, 1974
 PER CURIAM ORDER
 
 51
 Petitioners seek writs of prohibition and mandamus against the Honorable Stephen S. Chandler. The thrust of the District Court proceedings in cause No. 74-30-C against which extraordinary writs are sought is to enjoin the United States Attorney, the Director of Internal Revenue and their agents and servants from proceeding to conduct an investigation against the Honorable David Hall, Governor of Oklahoma. In connection with these proceedings in the District Court, an effort has been made to take the deposition of Dorothy Pike, former secretary to Governor Hall, the basis being that the testimony is essential to the defense of Governor Hall in the mentioned investigative proceedings.
 
 
 52
 An order to show cause has issued, oral arguments have been presented, briefs have been filed and it is now concluded that the action of the District Court has been and is now without jurisdiction in that the suit would seek to enjoin the defendants, petitioners here, from pursuing official duties. Thus, it is outside the jurisdiction of the District Court. See Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).
 
 
 53
 In Dugan v. Rank, supra, property owners sought to enjoin officials of the Bureau of Reclamation from impounding water behind a federal dam. The Supreme Court decided that such action against officials who were acting within the scope of their statutory authority was in effect a suit against the United States without its consent.[8]
 
 
 54
 Larson v. Domestic & Foreign Corp., supra, involved an action to enjoin the War Assets Administrator from selling surplus coal to any person other than the plaintiff. The Supreme Court dismissed the case on the grounds that it attempted to restrain a public official from performing his statutory function. However, the Court in Larson recognized two exceptions to the doctrine of sovereign immunity. These are: (1) actions by officers beyond their statutory powers and (2) although the actions by officers are within the scope of their powers, the powers themselves or the manner in which they are exercised are unconstitutional. Since neither of these exceptions applies to the case at bar, we conclude that the defendants in this action were immune from suit. See also Junior Chamber of Commerce of Rochester v. United States Jaycees, 495 F.2d 883 (10th Cir. 1974); National Helium Corp. v. Morton, 486 F.2d 995 (10th Cir. 1973).
 
 
 55
 It follows that the petitions for writ of prohibition and mandamus in cause No. 74-30-C in the district court, the injunction action against the United States Attorney and the Director of Internal Revenue, must be granted. The rule to show cause is made absolute, and it is ordered that the cause in the district court should be and the same is hereby dismissed.
 
 
 56
 The above order does not affect cause No. 74-29-C, the action seeking to perpetuate testimony.
 
 APPENDIX B
 
 57
 IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA
 
 
 58
 IN RE: WILLIAM R. BURKETT JEFF R. LAIRD JAMES M. PETERS FLOY E. DAWSON O. B. JOHNSTON III and G. PHIL HARNEY
 
 Miscellaneous No. 7
 JUDGMENT OF DISBARMENT
 
 59
 On this 11th day of March, 1974, the Court having considered the matters which have heretofore transpired in the very presence of the Court while sitting in and hearing
 
 
 60
 Civil Action Number 74-30-C pending in this Court entitled David Hall and Jo Evans Hall v. William R. Burkett, United States District Attorney for the Western District of Oklahoma; and Clyde L. Bickerstaff, District Director, Internal Revenue Service
 
 
 61
 and having carefully reviewed the entire record in said action, concludes that it is his duty under the law and the Canons of Judicial Ethics to disbar from the practice of law in the United States District Court for the Western District of Oklahoma,WILLIAM R. BURKETT, United States District Attorney for the Western District of Oklahoma; JEFF R. LAIRD, First Assistant United States District Attorney for the Western District of Oklahoma; JAMES M. PETERS, FLOY E. DAWSON and O. B. JOHNSTON III, Assistant United States District Attorneys for the Western District of Oklahoma; and G. PHIL HARNEY, Senior Attorney, Regional Counsel, Internal Revenue Service.
 
 
 62
 The Court upon careful consideration finds from the complete record of the evidence the facts to be that the above named members of the Bar, in violation of their oaths as members of the Bar of this Court and in violation of their oaths as Officers of the United States
 
 
 63
 1. Did wilfully and corruptly conspire with William R. Burkett to conceal the whereabouts of Mrs. Dorothy Pike from the United States Marshal and the Court after the Court had admonished them to ascertain and disclose her address and had ordered a subpoena issued and served upon her which constitutes obstructing and impeding justice in said action.
 
 
 64
 2. Did wilfully and corruptly aid and abet William R. Burkett in concealing the whereabouts of said Mrs. Dorothy Pike.
 
 
 65
 3. William R. Burkett did testify under oath that neither he nor the Internal Revenue Service nor their employees and agents knew the whereabouts of Mrs. Pike when in truth and in fact he knew that he could obtain her address and failed to reveal said fact, which constituted perjury.
 
 
 66
 4. The fact that William R. Burkett had not told the whole truth was known to Jeff R. Laird, James M. Peters, Floy E. Dawson and O. B. Johnston III and G. Phil Harney and they failed to reveal the fact to the Court which constituted the crime of Misprision of Felony.
 
 
 67
 5. Did conspire to injure David Hall and Jo Evans Hall in the free exercise and enjoyment of their civil rights and privileges secured to them by the Constitution and laws of the United States in violation of Title 18 U.S.C. 241.
 
 
 68
 6. The said attorneys did conspire to conceal from the Court that an Application for Writ of Prohibition and Mandamus would be filed and presented to the United States Court of Appeals for the Tenth Circuit on January 30, 1974, in
 
 
 69
 Original Action Number 74-1013 entitled William R. Burkett, United States Attorney for the Western District of Oklahoma; and Clyde L. Bickerstaff, District Director, Internal Revenue Service
 
 
 70
 after the Court had ordered in
 
 
 71
 Civil Action Number 74-30-C pending in this Court entitled David Hall and Jo Evans Hall v. William R. Burkett, United States District Attorney for the Western District of Oklahoma; and Clyde L. Bickerstaff, District
 
 
 72
 Director, Internal Revenue Service that he and the real parties in interest be notified of any such application so that they could appear and defend and said William R. Burkett did file such an Application and obtain an ex parte Writ of Prohibition prohibiting further proceedings in Civil Action Number 74-30.
 
 
 73
 All in violation of the Professional Code of Ethics and Title 18 U.S.C. 2, 1503, 241, 371, 401, 402, 1621, 1622, 1623.
 
 
 74
 THEREFORE, pursuant to Rule 4(j)(1) of the Rules of the United States District Court for the Western District of Oklahoma, adopted January 1, 1971,
 
 IT IS ORDERED AND ADJUDGED that
 WILLIAM R. BURKETT
 JEFF R. LAIRD
 JAMES M. PETERS
 FLOY E. DAWSON
 O. B. JOHNSTON III and
 
 75
 G. PHIL HARNEY are hereby DISBARRED and the Clerk of this Court is hereby ORDERED to strike their names from the roll of attorneys admitted to practice before the United States District Court for the Western District of Oklahoma.
 
 
 76
 In accordance with Rule 4(j)(1) said attorneys are advised that if they care to seek relief from this judgment by written Petition and care to show cause for the relief sought, they are ordered to file such a Petition with supporting brief in the Office of the Clerk of this Court on or before the 21st day of March, 1974.
 
 
 77
 The United States Marshal is ordered to make personal service of this Judgment upon each of named parties forth-with.
 
 
 78
 The Clerk of the Court is ORDERED to transmit forthwith a photostatic copy of this Judgment of Disbarment and the entire transcript of the evidence and proceedings in
 
 
 79
 Civil Action Number 74-30-C pending in this Court entitled David Hall and Jo Evans Hall v. William R. Burkett, United States District Attorney for the Western District of Oklahoma; and Clyde L. Bickerstaff, District Director, Internal Revenue Service
 
 
 80
 to The Attorney General of the United States of America and to the Oklahoma State Bar.
 
 
 81
 (s) Stephen S. Chandler UNITED STATES DISTRICT JUDGE ENTERED IN JUDGMENT DOCKET ON MAR. 11, 1974. By: Ruth T. Olsen
 
 
 
 [1]
 In this court Judge Chandler is represented by an outstanding member of the Colorado Bar, Walter A. Steele. We appointed Mr. Steele, and his representation of Judge Chandler has been and is excellent
 
 
 [2]
 Mr. Burkett had also filed on that same day a motion to dismiss to which was appended a handwritten affidavit of Dorothy Pike stating that she had requested and received protection from the Internal Revenue Service because of fear for her personal safety and stating that she was free to come and go as she wished
 
 
 [3]
 On this the Judge said:
 Of course I realized that you gentlemen, here, would know that it would be, to say the least, unethical and also, being law yers, would realize that to attempt to keep her from appearing would be a violation of the criminal laws of the United States, Section 1503, and Section 2 of Title 18, which provides that it would constitute obstructing and impeding justice, and would be a felony, which would apply not only to anyone doing the obstructing or the impeding but to anyone aiding or abetting, and who would be the same as a principal and that would constitute a felony.
 
 
 [4]
 He later said:
 I would think that the defendants in the action would furnish me with whatever facilities they have to expedite it and assist. I don't want her arrested and brought in here . . .. I believe that as soon as she's informed by anybody that this Court has process out for her . . . and that all of the defendants and the plaintiffs and the Court want her to be either deposed somewhere or to come here . . . that she will come in.
 
 
 [5]
 We have considered fully the contention of Judge Chandler that in adjudging the disbarments he acted consistently with Local Rule 4(j)(1) which gave petitioners-appellants a remedy to seek a review of the disbarment judgments. To the extent that the Rule allows entry of a final judgment of disbarment without a hearing, it conflicts with the Supreme Court and other federal court decisions. On that account, we have had to reject this argument advanced by respondent. The finality of the adjudications here is unquestionable. It is equally clear that there were no hearings
 
 
 [6]
 We have put to one side the question whether the lack of jurisdiction in the main lawsuit itself precluded the disbarment and contempt proceedings. See Hyde Construction Co. v. Koehring Co., 348 F.2d 643, 647 (10th Cir. 1965), rev'd on other grounds, 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966). In that case our court recognized that in a criminal contempt proceeding (which this purports to be) the court has the power to punish the actions constituting an affront to its dignity regardless of whether the order which was disobeyed was valid or not. Civil contempt was distinguished as being dependent on the validity of the order since it accrues to the benefit of the opposing party
 
 
 [7]
 See Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957)
 
 
 [8]
 The Supreme Court explained that a suit against public officials is considered a suit against the sovereign 'if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' . . . or if the effect of the judgment would be 'to restrain the Government from acting or to compel it to act." 372 U.S. at 620, 83 S.Ct. at 1006