**GRAND CANYON DORRIES, INC., et al.,**
**Appellants,**

**v.**

**Ronald H. WALKER, Director, National Park Service, et al., Appellees.**

**No. 73–1853.**

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1974.

---

Constance K. Lundberg, Salt Lake City, Utah (Owen Olpin, Salt Lake City, Utah, with her on the brief), for appellants.

Robert L. Klarquist, Atty., Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., C. Nelson Day, U. S. Atty., and George R. Hyde, Atty., Dept. of Justice, with him on the brief), for appellees.

Before SETH and HOLLOWAY, Circuit Judges, and TALBOT SMITH,* District Judge.

SETH, Circuit Judge.

The several appellants are operators of commercial float trips on the Colorado River below Glen Canyon Dam. They appeal the dismissal of their action for declaratory and injunctive relief against the Secretary of the Interior and various named officials of the Bureau of Reclamation and the National Park Service. The gist of their complaint is that the ongoing operation of Glen Canyon Dam and particularly the intermittent reductions in the volume of water released below the dam interfere with the safe conduct of the plaintiffs' float trips. Such interference is claimed to be a continuing breach of the contractual rights allegedly implied in the concession licenses which the plaintiffs have been granted by the National Park Service. The plaintiffs' more serious contention, however, is that the continuing operation of Glen Canyon Dam is a major federal action "significantly affecting the quality of the human environment," and therefore the National Environmental Policy Act (NEPA) requires the preparation of a detailed environmental impact statement. 42 U.S.C. § 4321 et seq.

Considering the contractual claims first, we find that the plaintiffs are in effect seeking specific performance of the Government's alleged obligations. Even if it were assumed that such obligations do arise from the plaintiffs' concession licenses, the court could not grant the relief requested. As we remarked in National Helium Corp. v. Morton, 486 F.2d 995 (10th Cir.):

"We have fully considered the Supreme Court cases which prohibit injunctive relief against governmental officers on account of their upholding the rights of the government arising under a contract. Such a suit is distinguished by the Supreme Court from actions seeking compensation for an alleged wrong and are regarded as actions against the sovereign to which there has not been consent."

Injunctive relief against the Government is not available in a contract action such as this, and the plaintiffs' remedy lies in an action for damages before the appropriate tribunal. See Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

The potential application of NEPA to the ongoing operation of a dam planned and constructed prior to passage of the Act could be a substantial issue, but it is not properly before us.

It is readily apparent that both NEPA and the Guidelines promulgated thereunder rely heavily on agency action to achieve their stated objectives. While the action itself is mandatory, the considerations and objectives are stated only in general terms. Thus it is also apparent that great reliance is placed on the proper exercise of administrative discretion and the good faith efforts of

* Of the Eastern District of Michigan, sitting by designation.

each agency. For this reason the agencies are given latitude in weighing the environmental factors to be considered in their decisions. As the provisions in the Guidelines and the Departmental Manual illustrate, this latitude exists also with respect to projects undertaken before passage of the Act.

■ It is obvious that the subject of the retroactive application of NEPA is not a matter entirely within agency discretion. What we do recognize is that the matter must be determined in the first instance by the agency undertaking or operating the project. It is precisely this administrative determination which has not been made in this case, and for this reason the basic issue is not presented, and we must affirm the dismissal.

■ In reviewing the record we find neither allegation nor evidence therein that the Department of the Interior or any of its subordinate agencies has ever considered, let alone decided, whether NEPA applies to the continuing operation of Glen Canyon Dam. Nor is there allegation or evidence that the plaintiffs have requested the Department to consider the question. During oral argument the plaintiffs alluded to a number of informal conversations with various Department officials. Even if the record were to reflect these conversations, they would still be insufficient to establish the Department's position.

At this point the court and even the plaintiffs can only speculate at the position the Department might ultimately take. It is possible that after reviewing the situation the Department might decide that an impact statement is feasible and necessary, and that it is practicable to comply fully with section 102. On the other hand, it may decide that by this time it would be unreasonable and impracticable to reconsider the operation. In any event whatever course the Department takes, judicial review must await its action. It is the Department which must in the first instance assemble and weigh the factors relevant to whether and how NEPA should be applied to the operation of the dam. Only when it has exercised the broad discretion conferred by the Act and the Guidelines will the issues be ripe for judicial determination.

We have considered the cases arising under NEPA in this Circuit and many of those arising in other Circuits. In every instance there is specific agency action or a decision that has been the subject for review, even if it was only a determination that the particular action was not subject to the requirements of NEPA. See, for example, Wyoming Outdoor Coordinating Council v. Butz, 484 F.2d 1244 (10th Cir.). We have no such action or decision before us to review in this case.

The problem before us can appropriately be characterized as one of ripeness. We believe this case closely parallels those in which the agency action for which review is sought is not sufficiently formalized to be appropriately considered by the courts. The Supreme Court expressed the controlling considerations in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681:

"Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

Although the facts of this case differ substantially from those in *Abbott Laboratories*, the considerations set forth therein apply equally well here. Judicial action at this point, without a decision by the Department whether NEPA will be applied, would be premature and would perhaps frustrate the very purposes of the Act. The opportunity should be first afforded the Department to uti-

lize the procedures set forth in its departmental manual, and to make its initial independent determination of the extent to which NEPA should be applied. Until that determination has been made, or the Department has in some formalized manner indicated its refusal to make it, the case is inappropriate for judicial consideration.

Affirmed.