**Bonita Lois NIXON and Barry Louis Nixon, on their behalf and on behalf of all others similarly situated**

**v.**

**Robert E. HAMPTON, Chairman of United States Civil Service Commission.**

**Civ. A. No. 75–935.**

United States District Court, E. D. Pennsylvania.

Sept. 12, 1975.

---

Bruce L. Thall, Public Interest Law Center of Phila., Philadelphia, Pa., for plaintiffs.

Robert E. J. Curran, U.S. Atty., William J. McGettigan, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Plaintiffs, individually and on behalf of all others similarly situated, have brought this action seeking declaratory and injunctive relief, and appropriate money damages, alleging that 5 U.S.C. § 8341(a)(3)(A) (Supp.1975), *amending* 5 U.S.C. § 8341(a)(4)(A) of the Civil Service Retirement Act, 5 U.S.C. § 8331 *et seq.*, is unconstitutional in that it denies them the equal protection of the laws implicitly guaranteed by the due process provision of the Fifth Amendment. The proposed class which plaintiffs represent is composed of all recognized illegitimate children of civilian employees of the United States Government who were not living, or will not be living, with the employee in a regular parent-child relationship at the time of the employee's death. The alleged unconstitutional discrimination results in the denial of survivor annuity benefits to members of the class, while such benefits are awarded to all legitimate children of deceased government employees and illegitimate children who were liv-

ing with an employee in a regular parent-child relationship.[1]

Plaintiffs' natural father, William Louis Rogers, was, at the time of his death, a civilian employee of the Defense Department in Gibbsboro, New Jersey. Following his death, plaintiffs' mother, Geraldine Nixon, filed a claim for survivor annuity benefits with the Civil Service Commission on behalf of her two children who were minors at that time. Her claim was denied on the ground that the children (plaintiffs) were not living in a regular parent-child relationship with the deceased.

Presently before the Court is defendant's motion to dismiss this action for lack of subject matter jurisdiction. Plaintiffs assert that jurisdiction exists under 28 U.S.C. § 1331(a); 28 U.S.C. § 1361 (Mandamus Act); 5 U.S.C. § 701 *et seq.* (Administrative Procedure Act); U.S.Const. amend. V; and 28 U.S.C. § 1346(a)(2) (Tucker Act). The Court notes at the outset that plaintiffs' constitutional challenge raises a substantial federal question. However, we will be unable to reach the substantive issue raised by the case. The Court agrees with defendant that it lacks subject matter jurisdiction over this action, for reasons more fully set out below.

■■ Plaintiffs assert, without any authority in support thereof, that the Fifth Amendment confers jurisdiction upon this Court. Such an assertion has never been accepted, as the District Courts of the United States are courts of limited jurisdiction, possessing only such jurisdiction as congressionally-enacted statutes expressly confer. *United States ex rel. Gittlemacker v. County of Philadelphia*, 413 F.2d 84, 88 (3d Cir. 1969); *People's Rights Organization v. Bethlehem Associates*, 356 F.Supp. 407, 409 (E.D.Pa.), *aff'd*, 487 F.2d 1395 (3d Cir. 1973). Therefore, the Fifth Amendment does not afford plaintiffs a basis for jurisdiction.

■ Jurisdiction also cannot be predicated upon the Tucker Act, 28 U.S.C. § 1346(a)(2). That Act gives district courts jurisdiction over claims against the United States for money damages not exceeding $10,000. The Supreme Court has construed the Act's applicability as being limited to actions for money damages and not as extending to suits for equitable relief against the United States. *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Since plaintiffs are asking for declaratory and injunctive relief as well as monetary damages, the Tucker Act is inapplicable in this case.

■ Jurisdiction may not be invoked under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, as the Third Circuit has held that the Act is remedial in nature and may not serve as an independent basis of jurisdiction. *Zimmerman v. United States*, 422 F.2d 326, 330–331 (3d Cir.), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970). The plaintiffs argue that, since *Zimmerman*, the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), held, *sub silentio*, that the APA provides an independent basis of jurisdiction. *Volpe* involved an attempt to enjoin the Secretary of Transportation from releasing federal funds to a state highways department for the

---

1. § 8341(a)(3) defines "child" as follows:

(A) an unmarried child under 18 years of age, including (i) an adopted child, and (ii) a stepchild or recognized natural child who lived with the employee or Member in a regular parent-child relationship, and (iii) a child who lived with and for whom a petition of adoption was filed by an employee or Member, and who is adopted by the surviving spouse of the employee or Member after his death;

(B) such unmarried child regardless of age who is incapable of self-support because of mental or physical disability incurred before age 18; or

(C) such unmarried child between 18 and 22 years of age who is a student regularly pursuing a full-time course of study or training in residence in a high school, trade school, technical or vocational institute, junior college, college, university, or comparable recognized educational institution.

construction of an expressway through city park lands. The Court noted that the APA subjects agency action to judicial review, but did not hold that the APA provided the jurisdictional vehicle by which to proceed to that review. *Id.* at 410, 91 S.Ct. 814. Additionally, the Third Circuit has addressed this question on numerous occasions subsequent to *Volpe,* and has repeatedly held that the APA does not provide an independent basis of jurisdiction. *See Grant v. Hogan,* 505 F.2d 1220, 1225 (3d Cir. 1974); *Bachowski v. Brennan,* 502 F.2d 79, 82 (3d Cir. 1974), *rev'd on other grounds sub nom., Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Chaudoin v. Atkinson,* 494 F.2d 1323, 1328–1329 (3d Cir. 1974); *Richardson v. United States,* 465 F.2d 844, 849 n. 2 (3d Cir. 1972), *rev'd on other grounds,* 418 U.S. 166, 95 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

■ Plaintiffs also purport to bring this action pursuant to the Mandamus Act, 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or agency thereof to perform a duty owed to the plaintiff.

The legislative history of the mandamus statute reveals that the statute's construction turns upon traditional mandamus law. Davis, Administrative Law Treatise (1970 Supplement) § 23.10. In *Richardson v. United States, supra,* the Third Circuit summarized the prior law as follows:

> In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act "devoid of the exercise of judgment or discretion." . . . An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from

doubt. 465 F.2d at 849 (citations omitted).

Applying this test, we do not believe that the performance which plaintiffs seek here can be said to be a clear, plain, ministerial act such as is envisioned in the concept of mandamus. To the contrary, the statute clearly commands the defendant not to award survivor annuity benefits to illegitimate children not living in a regular parent-child relationship.

■ Plaintiffs argue, however, that mandamus jurisdiction lies when the act of a federal official, although authorized by statute, is alleged to violate the Constitution; specifically in this case, the due process provision of the Fifth Amendment. *See Christian v. New York State Department of Labor, Division of Employment,* 414 U.S. 614, 617 n. 3, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974); *Burnett v. Tolson,* 474 F.2d 877, 880–883 (4th Cir. 1973); *Martinez v. Richardson,* 472 F.2d 1121, 1125 & 1126 n. 12 (10th Cir. 1973); *Mattern v. Weinberger,* 377 F.Supp. 906, 914 (E.D.Pa. 1974). *But see Jamieson v. Weinberger,* 379 F.Supp. 28, 34 (E.D.Pa.1974). Plaintiffs cite *Richardson v. United States, supra,* in support of their proposition. That case involved a taxpayer who sought a writ of mandamus to compel the publication of the budget of the Central Intelligence Agency. The statutory basis for the Secretary of the Treasury's refusal to provide the information was the Central Intelligence Agency Act, 50 U.S.C. § 403a *et seq.* (1970). Save for the existence of the Act, the Secretary would have been required to give an accounting of the expenditures, as required by the Accounting and Auditing Act of 1950, 31 U.S.C. §§ 66b(a), 1029. The court held that the government could not avoid an otherwise clear statutory duty by invoking the authority of what is challenged as an unconstitutional law. 465 F.2d at 850. However, in this case, absent § 8341(a)(3)(A),

there is no statutory duty which requires the agency to award benefits to children in plaintiffs' position.

The Court is not unmindful of the recent decision of Judge Newcomer of this District, in the case of *Rhodes v. Weinberger*, 388 F.Supp. 437, 443 (E.D.Pa. 1975), which held that mandamus was available as a jurisdictional basis for the plaintiffs' claim. In that case, certain classes of illegitimate minors were denied social security insurance benefits. The court found the provision in question to be constitutionally invalid, relying on *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), in which the Supreme Court had struck down a restriction identical to the one before the *Rhodes* court. With all due respect to the reasoning that was provided to support the conclusion in *Rhodes,* this Court does not believe that mandamus lies in the absence of a clear statutory duty. Unlike the case at hand, the *Rhodes* court had the benefit of the Supreme Court's holding in *Jimenez.* The Supreme Court has not so ruled as to § 8341(a)(3)(A), and to do so would require this Court to rule on the merits in order to decide the jurisdictional question.

Finally, the Third Circuit, in *Spock v. David,* 469 F.2d 1047, 1050 (3d Cir. 1972) (*Spock* I), addressed the question of whether, absent a clear statutory duty, mandamus will lie to compel federal officers to cease from enforcing an alleged unconstitutional statute, or to prohibit unconstitutional actions. The plaintiffs, political candidates and pamphleteers, who were barred by federal officials from entering the Fort Dix Military Reservation in New Jersey, brought an action for an injunction against interference with civil rights protected by the First Amendment. In its rejection of the Mandamus Act as a basis of jurisdiction, the court stated:

28 U.S.C. § 1361 is one of the grants of federal jurisdiction to which no jurisdictional amount is attached. But by no fair reading could the complaint be construed as alleging an action in mandamus to compel David and Laird to perform a duty owed to the plaintiffs. Under plaintiffs' theory in the complaint defendants are acting outside their authority. It sets forth a suit in equity for an injunction against interference with civil rights protected by the first amendment. 469 F.2d at 1050.

Similarly, plaintiffs allege that defendant acted outside his authority, and set out a suit in equity for injunctive relief against discrimination in violation of their due process rights under the Fifth Amendment. Accordingly, plaintiffs have not supported their allegations of jurisdiction under § 1361.

■ 28 U.S.C. § 1331(a) provides this Court with original jurisdiction over civil actions arising under the Constitution or laws of the United States, if the matter in controversy exceeds $10,000. Clearly this action arises under the Constitution of the United States; however, there is a question as to whether plaintiffs individually meet the monetary requirement and, if not, whether they can aggregate their claims in order to meet the $10,000 amount.

■ The complaint does contain an allegation that the matter in controversy exceeds $10,000 exclusive of interests and costs. Normally, such an allegation made in good faith is sufficient, unless it appears to be a legal certainty that the plaintiff cannot recover the jurisdictional amount. *See Spock v. David, supra,* 469 F.2d at 1050; *Davis v. Shultz,* 453 F.2d 497, 501 (3d Cir. 1971). Should plaintiffs be entitled to survivor annuity benefits under § 8341(a)(3)(A), they would each receive an amount substantially less than the $10,000 requirement.[2] Thus, it appears to be a legal

2. *See* Affidavit of Robert A. Tinsley, Director, Bureau of Retirement, Insurance, and Occupational Health, of the Civil Service Commission, Exhibit A attached to defendant's Memorandum in Support of Motion to Dismiss.

certainty that plaintiffs individually cannot recover the requisite jurisdictional amount.

 Plaintiffs assert that, in actions claiming violations of constitutional rights by federal officials, courts have usually not required a strict showing of $10,000 in controversy, citing *Spock v. David,* 502 F.2d 953 (3d Cir. 1974), *cert. granted,* 421 U.S. 908, 95 S.Ct. 1556, 43 L.Ed.2d 773 (1975) (*Spock* II). That case was concerned with the alleged infringements of the plaintiffs' First Amendment rights. The court had previously held in *Spock* I that such rights were capable of valuation for purpose of establishing the requisite amount in controversy, but remanded to the district court to determine whether the proper amount in fact existed. In *Spock* II, the court affirmed the district court's finding, noting that the cost of conveying the plaintiffs' political message to the 28,000 people living in Fort Dix by alternative means was well in excess of $10,000. 502 F.2d at 956. Thus, in this circuit, the requisite amount must appear to be a legal certainty even when federal officials have allegedly violated constitutional rights.

Cases such as the instant case, in which federal authorities allegedly interfere with rights guaranteed by the Constitution, are, as Judge Medina characterized them in *Wolff v. Selective Service Local Board No. 16,* 372 F.2d 817, 826 (2d Cir. 1967), "an unfortunate gap in the statutory jurisdiction of the federal courts . . . ." However, the Supreme Court in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 547, 92 S. Ct. 1113, 1119, 31 L.Ed.2d 424 (1972), dealt with this very problem stating:

> [I]n suits against federal officials for alleged deprivation of constitutional rights, it is necessary to satisfy the amount-in-controversy requirement for federal jurisdiction. See *Oester-*

*eich v. Selective Service Board,* 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402; *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619.

Therefore, even though this "gap" may deny plaintiffs resort to a federal forum, such an unfortunate result must be rectified by Congress and not by judicial legislation. *McGaw v. Farrow,* 472 F.2d 952, 955 (4th Cir. 1973); *Spock v. David, supra,* 469 F.2d at 1050–1051.

The named plaintiffs may not aggregate their claims to reach the requisite jurisdictional level. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939). Plaintiffs contend that their claims are not separate and distinct, but are a single right in which they have a common and undivided interest; *i. e.,* the protection of the integrity of the program. *Comprehensive Group Health Services Board of Directors v. Temple University,* 363 F.Supp. 1069, 1094–1096 (E.D.Pa.1973); *Bass v. Rockefeller,* 331 F.Supp. 945, 949–952 (S.D.N.Y.), *appeal dismissed as moot,* 464 F.2d 1300 (2d Cir. 1971). Assuming, *arguendo,* that the value of such protection exceeds $10,000, it cannot be said that the thrust of plaintiffs' action is directed toward such a purpose. Rather, each claim of the individual class member rests upon its own merits and each member would be entitled to a specific amount due, as defined by the statute. *See Bass v. Rockefeller, supra,* 331 F.Supp. at 951. Accordingly, plaintiffs may not aggregate their claims to meet the requisite amount.

For all of the above reasons, defendant's motion to dismiss this action for lack of subject matter jurisdiction will be granted.