**JETS SERVICES, INC., Plaintiff,**

v.

**Martin HOFFMAN et al., Defendants,**

**No. 76–456–Civ–J–T.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Oct. 4, 1976.

---

Al Millar, Jacksonville, Fla., for plaintiff.

Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for defendants.

## MEMORANDUM OPINION DENYING MOTION FOR A PRELIMINARY INJUNCTION

CHARLES R. SCOTT, District Judge.

### JURISDICTION

The Court's jurisdiction in this cause is invoked under 15 U.S.C. Secs. 634(b)(1) and 637(a), The Small Business Act ('the Act'), and its implementing regulations; 5 U.S.C. Sec. 551 et seq., and especially Sec. 702, the Administrative Procedure Act ('the APA'); 28 U.S.C. Sec. 1331, federal question jurisdiction; and 28 U.S.C. Secs. 2201–02, declaratory judgment jurisdiction.

### STATUS OF THE CASE

Plaintiff has moved the Court for interim relief in the form of a preliminary injunction pending the final outcome of this action. Originally the hearing on the preliminary injunction motion and the final hearing on the merits were consolidated, as provided by Fed.R.Civ.P. 65(a)(2). At the time of hearing, however, plaintiff sought, and defendants consented to, severance of the hearings. Hence, the final hearing in this cause has been continued until a later date.

■ Because a preliminary injunction is an extraordinary equitable remedy, *Sampson v. Murray*, 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Canal Authority of the State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974), warranted only by exceptional circumstances, whether the injunction is issued or denied the Court must make clear and specific findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70*, 415 U.S. 423, 443, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *Canal Authority of the State of Fla. v. Callaway, supra* at 578. Consequently, as grounds for denying the motion for a preliminary injunction, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

There are basically three kinds of contracting by the government: general procurement; protective procurement; and negotiated contracts. In the general procurement situation, a federal agency or department issues an invitation for bids ("IFB") from all interested parties. Pursuant to guidelines concerning IFBs, the parties competitively submit their bids and the agency or department accepts the lowest bid by a responsible bidder, in order to execute a contract. In the protective procurement situation, the set of parties invited to submit bids is less than all interested parties. Instead, only those members of a class of persons intended to be the recipients of federal assistance and protection are invited to submit bids. The Small Business Administration ("SBA") was created to assist small businesses, and one of its methods is in securing contracts for small businesses with departments and agencies of the federal government. SBA determines whether a company is in fact a small business entitled to the protection of the act, 15 U.S.C. Sec. 637(b)(6). Further, SBA assists in finding agencies and departments suitable for contracting with small businesses. An agency or department will then invite bids from all and only those small businesses that SBA has certified as competent to perform the work required by the potential contract. This instance of protective procurement is known as "a small business set-aside" because the contract is set aside for bidding by SBA small businesses only. The bidding is competitive within that class of small businesses, with the contracting agency accepting the lowest bid.

In the negotiated contract situation, there is no competitive bidding. Rather, where necessary or warranted, a federal agency or department negotiates a contract directly with a party to obtain performance of the work desired. Ordinarily, other interested parties have no participation unless, upon failure to successfully negotiate a proposed contract with the first party, the contracting agency should then turn to one of them. SBA has a program ("the 8(a)

program") designed to assist small businesses owned and controlled by socially or economically disadvantaged persons. The program is established by regulations, 13 C.F.R. Secs. 124.8–1 and 124.8–2, that implement SBA's statutory authority. 15 U.S.C. Sec. 637(a)(2). In the 8(a) program SBA negotiates a contract with a contracting federal agency. In turn, SBA subcontracts its rights and obligations under the contract to a disadvantaged company that had been identified by SBA to the contracting agency at the outset of the negotiations.

Plaintiff is a small business under the Small Business Act, 15 U.S.C. Sec. 631 et seq., incorporated under the laws of Florida, with its principal place of business in Jacksonville. Through competitive bidding on a small business set-aside, plaintiff obtained a contract with the Department of Army ("the Army") to provide mess attendant services ("K–P services") at Fort Carson, Colorado. In previous years, a different contractor had held the K–P contract at Fort Carson each year. In fiscal 1973, the contract had been awarded to a contractor as the result of competitive bidding under a small business set-aside. In fiscal 1974, the Army and SBA had negotiated a contract that was subcontracted out under the 8(a) program to a disadvantaged subcontractor; but it was not renewed because of unsatisfactory performance. In fiscal 1975, the Fort Carson contract was once again a small business set-aside, reserved for competitive bidding among qualified small businesses. A different contractor won the bidding and was awarded that contract. Plaintiff's contract at Fort Carson, for fiscal 1976, ran from July 1, 1975 through May 31, 1976.

In late 1975, SBA learned that the Army intended to reduce the number of mess attendant service contracts that would be available for the 8(a) program in fiscal 1977. In fiscal 1976 there had been 29 contracts under the 8(a) program. The Army wanted to limit the number to 10 for fiscal 1977. In December, 1975, SBA and Army officials met to discuss the Army's

plans. Among the 19 installations' contracts that the Army wanted to remove from the 8(a) program were those at Fort Riley and Fort Leonard Wood. After urging by SBA officials that more Army contracts be made available to disadvantaged companies under the 8(a) program, the Army urged to increase the total number to 12 by substituting Fort Campbell, Kentucky, and Fort Carson, Colorado, for the 8(a) programs being terminated at Forts Riley and Leonard Wood. SBA officials agreed to accept the substitution and to formally request that officials at Fort Campbell and Carson reserve the contracts in fiscal 1977 for negotiation with SBA under its 8(a) program. Those formal requests, required under Armed Services Procurement Regulations ("ASPR"), are known as "ASPR letters". On January 9, 1976, the acting director of SBA's office of business development sent the required ASPR letter to the chief procurement officer at Fort Carson, Colorado.

On January 20, 1976, an officer in SBA's office of business development wrote to the assistant regional director of the SBA's region IV, requesting a size determination concerning plaintiff's business. That determination was needed in order to prepare an impact statement assessing the effect upon plaintiff of removing the Fort Carson contract from competitive bidding as a small business set-aside, and placing it in the 8(a) program. On January 22, 1976, the region IV assistant director wrote to plaintiff's vice-president, requesting him to complete and return a form concerning plaintiff's size and annual receipts. On January 28, 1976, after receipt of the completed form from plaintiff, the assistant director notified the SBA business development officer that plaintiff continued to qualify as a small business under the act.

On February 2, 1976, a new SBA standard operating procedure, SOP 60-41-2, became effective. SOP 60-41-2 provides that before a proposed contract is selected for the 8(a) program, a determination must be made that none of the following circumstances would result.

(1) The percentage of procurements considered for 8(a) contracting in the judgment of SBA is excessive in relation to the total purchases of like or similar products, or services procured by the Federal Government.

(2) Public solicitation has already been issued under a small business set aside for the specific procurement in question in the form of an Invitation for Bid (IFB), Request For Proposal (RFP), or Request for Quotation (RFQ). Procurement Information Notices (PIN), annual procurement forecasts and other methods of disseminating information of general intention to procure are not sufficient reasons, in and of themselves, to preclude a procurement from 8(a) consideration. Past procurement actions and future probabilities (including the appearance of products in catalogs) do not preclude prospective procurement actions from 8(a) consideration.

(3) The procuring activity can make an award directly to a small business concern owned by an eligible disadvantaged person(s) or there is reasonable probability that a competitive award can be won by such a disadvantaged small business concern.

(4) It is determined by the SBA that a small business concern may suffer a major hardship if the procurement is removed from competition, thereby denying the concern, otherwise historically dependent on such recurring procurement(s), the opportunity to compete. In establishing this determination, the affected firm should be a regular producer receiving one or more awards within the past year, and be dependent upon such recurring award(s) for a significant part of its overall sales.

Those four circumstances are the same four factors listed for consideration in SBA's regulation, 13 C.F.R. Sec. 124.8–2(b); they are also the same four criteria listed in the standard impact statements issued by SBA. On February 17, 1976, the business develop-

ment officer sent his findings concerning plaintiff to the region VII assistant director, who relied upon those findings in his impact statement issued one day later. That impact statement found the latter two conditions to exist and concluded that the 8(a) program was not suitable for the Fort Carson contract. In a letter of February 25, 1976, to the associate administrator, however, the assistant director conveyed the conclusions of his February 18 impact statement, and then requested a review by the Central Office and an early commitment of suitable contracts for the 8(a) program to the two disadvantaged companies that had long-awaited an 8(a) program opportunity, and that had anticipated subcontracting at the Fort Carson and Fort Campbell installations.

The associate administrator, on March 26, 1976, wrote to the assistant regional director, explaining interpretive guidelines concerning the four criteria in SOP 60–41–2, 13 C.F.R. Sec. 124.8–2(b), and the standard impact statements. It was his intention to correct an erroneous interpretation of the policy that those criteria reflect. Essentially he advised that the criteria should be interpreted in view of factually altered information: the Army's intention to reduce the total number of 8(a) programs at its installations. That interpretation would base an evaluation of the third and fourth factors on the recognition that fewer 8(a) programs would be available with the Army, but that more competitive bidding opportunities would be set aside for small businesses by the Army.

On May 3, 1976, a new impact statement was issued by the assistant regional director, finding that an 8(a) program at Fort Carson would be suitable, and that none of the four adverse conditions would result. After that, SBA and the Army began negotiating a contract that would be subcontracted to Groves Contract Services, a disadvantaged company under 13 C.F.R. Sec. 124.8–1.

Meanwhile, back in March, 1976, plaintiff discovered that SBA intended to place that Fort Carson contract for fiscal 1977 in the 8(a) program. Plaintiff wrote a series of protest letters to SBA officials, culminating with a protest letter to the General Accounting Officer ("GAO") concerning SBA's plans. SBA withheld acting on plaintiff's protests to it pending a determination of plaintiff's protest to the GAO. On May 4, 1976, the GAO dismissed plaintiff's protest on the ground that a decision by SBA to place a contract in the 8(a) program is not subject to legal review by the GAO. Subsequently, on May 26, 1976, SBA denied plaintiff's protests to it on the basis of the May 3, 1976 impact statement that found no adverse consequences from instituting an 8(a) program at Fort Carson. Plaintiff then commenced this action on July 6, 1976.

## CONCLUSIONS OF LAW

The four necessary criteria that must be satisfied in order to obtain a preliminary injunction are the following:

(1) Irreparable injury because of the unavailability of an adequate remedy at law;

(2) Substantial likelihood of success on the merits;

(3) Threatened injury to the plaintiff outweighs any possible injury to the defendants;

(4) Issuing a preliminary injunction will not work any disservice to the public interest.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70,* 415 U.S. 423, 441, 443, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *Sampson v. Murray,* 415 U.S. 61, 84 n.53, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Canal Authority of the State of Fla. v. Callaway, supra* at 572; *Blackshear Resident Organization v. Romney,* 472 F.2d 1197, 1198 (5th Cir. 1973); *Allison v. Froehlke,* 470 F.2d 1123, 1126 (5th Cir. 1972). The burden of proof is on the plaintiff to meet each of those criteria. *Canal Authority of the State of Fla. v. Callaway, supra; Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975). Since the Court balances the evidence on each of those criteria by means of a sliding-scale analysis, a much stronger showing on one or

**1306**

more of the necessary factors lessens the amount of proof required for the remaining factors. *State of Tex. v. Seatrain Internat'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975); *Siff v. State Democratic Exec. Committee*, 500 F.2d 1307 (5th Cir. 1974); *Delaware Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974). Nevertheless, the principal and overriding prerequisite is irreparable harm resulting from the absence of an adequate remedy at law. *Sampson v. Murray*, 415 U.S. 61, 88–92 and n.68, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *A. O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976).

### 1. *Irreparable Injury.*

 It is axiomatic that if there is no genuine interest at stake, there can be no injury, threatened or actual, irreparable or remediable. In this case plaintiff is not a disappointed, second-lowest bidder whose interest would be the contract to which it would be entitled by virtue of being next-in-line under the IFB guidelines. *See, e.g., Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 403 (9th Cir. 1975); *Hayes Internat'l Corp. v. McLucas*, 509 F.2d 247, 254–57 (5th Cir. 1975). Neither is plaintiff an incumbent contractor seeking relief from the breach or infringement of present contractual rights. Although nearly 43% of plaintiff's business income was derived from its contract with the Army at Fort Carson, that fact does not constitute an interest threatened with irreparable injury sufficient to justify injunctive relief. First, there never was a breach in the original contract between plaintiff and the Army. It was successfully performed, with both parties' rights and duties under it discharged upon completion. It remains extended month-to-month past its termination date only because the Court's ruling on plaintiff's preliminary injunction motion was pending. Second, if there had been a breach during performance of the contract, plaintiff would have had available a remedy at law for damages, to recover its lost income under the contract; but in that event, extraordinary equitable relief would be neither necessary nor justified. Third, as SBA

officials recognized, the increased number of small business set-asides with the Army in fiscal 1977 provides greater opportunities for plaintiff to bid competitively for K–P contracts. Hence, the removal of the Fort Carson contract from competitive bidding does not deprive plaintiff of its only possible K–P contract. Fourth, in fact, plaintiff's president admitted that plaintiff is actively engaged in competition for contracts at Army installations where it had never before submitted bids. Clearly, plaintiff has no present contractual interest at stake that requires extraordinary injunctive relief.

Plaintiff's only putative interest at stake is an amorphous notion called 'competitive edge'. Plaintiff argues that since it was the last contractor to provide K–P services at Fort Carson, plaintiff *might* have an edge over *potential* rivals *if* the contract *were opened* to competitive bidding as a small business set-aside. Plaintiff further contends that if the K–P contract at Fort Carson is placed in the 8(a) program for one to three years, any edge that plaintiff *might possess if* the contract *were opened* to competitive bidding would likely be lost because plaintiff's status would be different. That purported interest is far too speculative, conjectural, and counterfactual to justify injunctive relief. It is not an interest that is discernible in any present state of facts. Only if some factual situation that is presently not the case should occur might plaintiff's alleged competitive edge arise. To be sure, as the Court observed, plaintiff's status, and that of all persons, will be different in a year or three. Heraclitus, a presocratic thinker, long ago concluded that one can never step into the very same river twice. Nevertheless, the mere fact of change cannot support the issuance of an injunction. There must be a recognized, legitimate interest that will vanish if it is not preserved from irreparable deterioration. Plaintiff has shown no such genuine interest.

Finally, plaintiff overlooks a principle of law stemming from *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127, 60 S.Ct. 869, 84 L.Ed.

1108 (1940), that remains unchanged despite the subsequent enactment of the Administrative Procedure Act (5 U.S.C. Sec. 551 et seq.), the broadened and loosened concept of standing generally by the Supreme Court, and in the federal procurement field specifically by *Scanwell Labs., Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970) and its progeny. The principle is that the government is under no obligation to do business with, and provide business for, anyone. Similarly, there is no constitutional or statutory requirement that the government offer all of its business through competitive bidding. *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 708, 709 (5th Cir. 1973). *See e.g.,* 41 U.S.C. Secs. 252(c)(10) and (15). The fact that plaintiff may not receive all of the business it desires from the government does not create a right to insist that the government offer more, or to invoke the Court's intervention in internal policy decisions concerning what, and how much, business to offer. *Valley Forge Flag Co. v. Kleppe*, 165 U.S.App.D.C. 182, 506 F.2d 243, 245 (1974). The Court consequently concludes that plaintiff has demonstrated no genuine interest that is susceptible to irreparable injury, and that the extraordinary remedy of a preliminary injunction is therefore unwarranted.

2. *Likelihood Of Success On The Merits.*

The questions before the Court at a preliminary injunction hearing, and at a final hearing on the merits, are different and yet related. The ultimate question before the Court on the merits is whether the decision of SBA officials that the Fort Carson contract could be removed from competitive bidding, and placed in the 8(a) program for fiscal 1977 without serious harm to plaintiff, was an abuse of discretion. Plaintiff argues that the decision was arbitrary and capricious, arrived at by failing to follow properly internal SBA procedures. SBA contends, on the other hand, that its internal procedures were complied with, but that a more realistic and accurate interpretation of the procedural criteria yielded a different result than that desired by plaintiff. While the Court does not decide that

question at this time, on a preliminary injunction motion the Court must make an initial, interim assessment of plaintiff's case on the basis of the evidence produced so far. If it were possible to quantify the evidence and the law, the question would be phrased as whether plaintiff's probability of a successful outcome is greater than .5. Formulated in ordinary language, the question is whether, as the case presently appears, plaintiff is more likely than not to succeed eventually on the merits. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975). It is that preview evaluation of plaintiff's case that relates the preliminary injunction determinations to the final judgment on the merits. *Id.* Hence, the Court's findings and conclusions, while firm for the purpose of ruling on the preliminary injunction motion, remain tentative with respect to the final judgment on the merits. *Poe v. Charlotte Memorial Hosp.*, 374 F.Supp. 1302, 1312 (W.D.N.C.1974).

From the evidence before it, the Court finds that the March 26, 1976, letter from the associate administrator of SBA was an interpretation of current SBA procedures intended to clarify a misunderstanding concerning them. The law is settled by an overwhelming weight of authority that an administrative agency is vested with the power to interpret its own regulations and guidelines. Moreover, an agency's interpretation is accorded deference and deemed controlling so long as it is one of several reasonable alternatives, even if it is not the one that a court might have chosen. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Clarkson Constr. Co. v. OSHRC*, 531 F.2d 451, 457 (10th Cir. 1976); *Florida Sugar Cane League, Inc. v. Usery*, 531 F.2d 299, 304 (5th Cir. 1976); *Lucas Coal Co. v. Interior Bd. of Mine Operation Appeals*, 522 F.2d 581, 587 n.27 (3d Cir. 1975); *Brennan v. OSHRC*, 513 F.2d 713, 716 (8th Cir. 1975); *Brennan v. OSHRC*, 513 F.2d 553, 554 (10th Cir. 1975); *Budd Co. v. OSHRC*, 513 F.2d 201, 205 (3d Cir. 1975); *Perine v. William Norton & Co.*, 509 F.2d 114, 120 (2d Cir. 1974); *Brennan v. OSHRC*, 501 F.2d 1196, 1199 (7th Cir. 1974); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d

971, 976–77 (5th Cir. 1974); *Brennan v. Southern Contractors Serv.*, 492 F.2d 498, 501 (5th Cir. 1974); *Shell Oil Co. v. FPC*, 491 F.2d 82, 88 (5th Cir. 1974); *Board of Directors & Officers, Forbes Fed. Credit Union v. National Credit Union Admin.*, 477 F.2d 777, 784 (10th Cir. 1973); *Roy Bryant Cattle Co. v. United States*, 463 F.2d 418, 420 (5th Cir. 1972); *Crowley v. Pierce*, 461 F.2d 614, 620 and n.14 (5th Cir. 1972); *Allen M. Campbell Co. v. Lloyd Wood Constr. Co.*, 446 F.2d 261, 265 (5th Cir. 1971). Finally, an administrative agency is not bound to an interpretation or guideline when it becomes evident from experience that changes are required to keep pace with present conditions. Otherwise, it would lose its necessary discretionary flexibility to act in its field of expertise, and would become burdened with fossilized errors. *Maxwell Co. v. NLRB*, 414 F.2d 477, 479 (6th Cir. 1969); *Flotill Prods, Inc. v. FTC*, 358 F.2d 224, 230 (9th Cir. 1966); *Dubrow v. SBA*, 345 F.Supp. 4, 7 (C.D.Cal.1972). As the case presently appears, therefore, the Court must conclude that the new interpretation of SBA procedures, resulting in a decision unfavorable to plaintiff's desires, was a permissible exercise of that agency's discretion, and that plaintiff's chances of success are slight and do not warrant extraordinary injunctive relief.

3. *Plaintiff's Harm Outweighs Defendants' Possible Harm.*

Because the Court has found that plaintiff has no genuine interest that is sustaining, or threatened with, irreparable injury, to warrant a preliminary injunction, the Court further concludes that a fortiori plaintiff cannot incur harm from the denial of an injunction that would outweigh any possible harm that defendants might suffer from issuing an injunction.

4. *Disservice To The Public Interest.*

■■■■ Where an administrative agency has been established and charged with implementing public policy reflected in Congress' legislation, enjoining discretionary agency activity without demonstrable justification may result in a disservice to the public interest by frustrating Congressional intent.

Although the Court has concluded that plaintiff has not satisfied the four necessary conditions for a preliminary injunction, there is another ground upon which the Court alternatively bases its denial of the injunction. It is clear that the Administrative Procedure Act ("APA") creates a presumption of judicial reviewability of administrative agency decisions. *Association of Data Processing Service Organization v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). That presumption is expressly rebuttable, however, by decisional and statutory authority that prohibits some or all judicial review and remedies. 5 U.S.C. Sec. 701(a)(1).

■■■ In this case it is clear that the Court lacks jurisdiction over defendants Mitchell Kobelinski, Administrator of SBA, and Deryl K. Schuster, SBA Regional Director, to grant injunctive relief. 15 U.S.C. Sec. 634(b)(1) of the Small Business Act is a waiver of sovereign immunity, conferring jurisdiction over SBA and its officials to be sued. *Romeo v. United States*, 462 F.2d 1036, 1037 (5th Cir. 1972), *cert. den.* 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973); *Mar v. Kleppe*, 520 F.2d 867, 870 (10th Cir. 1975); *United States v. Mel's Locker's Inc.*, 346 F.2d 168, 169–170 (10th Cir. 1965); *Lloyd Wood Constr. Co. v. Sandoval*, 318 F.Supp. 1167, 1171 (N.D.Ala.1970), *rev'd for substituting judicial determination in place of SBA's discretionary size-determination of small business, sub. nom. Allen M. Campbell Co. v. Lloyd Wood Constr. Co.*, 446 F.2d 261 (5th Cir. 1971). The waiver and resultant jurisdiction, however, are limited: injunctive relief is expressly excluded. *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975); *Valley Forge Flag Co v. Kleppe*, 165 U.S. App.D.C. 182, 506 F.2d 243, 244 (1974); *Romeo v. United States*, 462 F.2d 1036, 1037–38 (5th Cir. 1972, *cert. den.* 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973); *Vincent v. SBA* 402 F.2d 769, 771 (4th Cir. 1968); *United States v. Mel's Lockers, Inc.*, 346

F.2d 168, 169–70 (10th Cir. 1965); *Duke City Lumber Co. v. Butz*, 382 F.Supp. 362, 370 n.16 (D.D.C.1974); *Capital Refrigeration, Inc. v. United States*, 375 F.Supp. 462, 464 (M.D.Pa.1973); *Peoples Brewing Co v. Kleppe*, 360 F.Supp. 729, 730 (E.D.Wis. 1973); *Analytical Systems Corp. v. SBA*, 346 F.Supp. 1149, 1150 (D.Mass.1972); *Lloyd Wood Constr. Co. v. Sandoval*, 318 F.Supp. 1167, 1172 (N.D.Ala.1970), *rev'd on alt. grounds sub nom. Allen M. Campbell Co. v. Lloyd Wood Constr. Co.*, 446 F.2d 261 (5th Cir. 1971); *vonLusch v. Hoffmaster*, 253 F.Supp. 633, 634, 635 (D.Md.1966). Therefore, the Court is precluded as a matter of law from granting injunctive relief against the SBA defendants because it lacks jurisdiction over them to do so.

Apparently Congress intended that the discretionary administrative decisions and activities of SBA remain unencumbered by equitable judicial remedies such as injunctions. Plaintiff, however, also seeks injunctive relief against the Army defendants. Still, plaintiff does not complain of any activities by the Army and its officials. The gist of this lawsuit, and the ultimate question before the Court at the final hearing on the merits, is whether SBA officials abused their discretion in withdrawing the Fort Carson K–P contract from competitive bidding as a small business set-aside, and placing it in the 8(a) program. Any hypothetical harm or adverse consequences to plaintiff are alleged to have resulted from that exercise of SBA's discretion. It is clear, therefore, that in seeking injunctive relief against the Army defendants plaintiff seeks to circumvent the plain policy behind the Congressional bar against enjoining SBA activities. Plaintiff seeks to accomplish indirectly, by enjoining the Army defendants, what it is expressly prohibited from doing directly: enjoining the activity of SBA officials. *Lloyd Wood Constr. Co. v. Sandoval*, 318 F.Supp. 1167, 1172 (N.D.Ala.1970), *rev'd on alt. grounds sub nom. Allen M. Campbell Co. v. Lloyd Wood Constr. Co.*, 446 F.2d 261 (5th Cir. 1971). *Cf. Warner v. Cox*, 487 F.2d 1301, 1304 (5th Cir. 1974). The Court holds therefore that in the absence of any claim against the Army defendants, plaintiff is precluded statutorily from obtaining injunctive relief against them when the only effect of that relief would be to thwart the statutory bar against enjoining SBA activities.

It is clear that plaintiff has no independent claim to assert against the Army defendants. The Court has already held that plaintiff has no interests arising from contractual rights with the Army defendants that would entitle plaintiff to relief against them. Even if, arguendo, plaintiff were asserting contractual rights against the Army defendants, jurisdiction would be under the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. Sec. 1346(a)(2), for compensatory damages only. The Tucker Act authorizes neither injunctive nor declaratory relief. *International Engineering Co. v. Richardson*, 167 U.S.App.D.C. 396, 512 F.2d 573, 577, 579 (1975); *Grand Canyon Dorries, Inc. v. Walker*, 500 F.2d 588, 589 (10th Cir. 1974); *National Helium Corp. v. Morton*, 486 F.2d 995, 1000 (10th Cir. 1973); *Nixon v. Hampton*, 400 F.Supp. 881, 884 (E.D.Pa.1975); *Spain v. United States, Atomic Nuclear Regulatory Comm'n*, 397 F.Supp. 15, 16 (M.D.La.1975); *Short v. Murphy*, 368 F.Supp. 591, 594 (E.D.Mich.1973), *aff'd* 512 F.2d 374 (6th Cir. 1975). Consequently, no injunctive relief would be available against the Army defendants even under an alleged Tucker Act claim.

In conclusion, the Court holds that plaintiff's preliminary injunction motion must be denied (1) because plaintiff has not satisfied the four necessary criteria for that extraordinary relief; and, alternatively, (2) because Congress has statutorily precluded the Court from jurisdiction to grant such injunctive relief.