OREGON NATURAL RESOURCES COUNCIL, INC., an Oregon non-profit corporation; Wendell Wood; Mark Gaffney, Plaintiffs–Appellants,

v.

BUREAU OF RECLAMATION; United States Department of Interior; Kirk Rodgers, in his capacity as Project Manager, Klamath Project Mid–Pacific Region, Bureau of Reclamation, United States Department of the Interior; Dennis Underwood, in his capacity as Commissioner, Bureau of Reclamation, United States Department of the Interior; Manual Lujan, in his capacity as Secretary, United States Department of the Interior; Defendants–Appellees.

and

Klamath Basin Water Users Protective Association and Tulelake Irrigation District, Intervenors.

No. 93–35591.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1994.

Decided Oct. 14, 1994.

Peter C. Sorenson, Sorenson Law Office, Eugene, OR, for plaintiffs-appellants.

Robert L. Klarquist, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

Paul S. Simmons, Sacramento, CA, and Jere M. Webb, Portland, OR, for intervenors.

Before: BROWNING, KOZINSKI and NOONAN, Jr., Circuit Judges.

PER CURIAM:

Oregon Natural Resources Council, Inc., et al. ("the Council"), filed suit against the Bureau of Reclamation, et al. ("the Bureau"), alleging the Bureau's activities at the Klamath Irrigation Project ("the Project") violated the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ·Later amendments to the complaint added claims that the Bureau failed to comply with the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"). The Council appeals the district court's summary judgment for the Bureau on the NEPA claims.

I.

The water levels in Klamath Lake and Clear Lake, which are part of the Project, are controlled by dams. Water is released as required to meet the irrigation needs of the Project. In recent drought years, the Bureau has maintained water levels of the lakes at historic lows.

In the late 1960's, the Bureau began using aquatic herbicides in the Project's waterways. The herbicides poisoned two varieties of fish that inhabit the Project's waterways, the shortnose sucker and the Lost River sucker. In 1988, these fish were listed as endangered species.

The Council claims the Bureau violated NEPA by failing to comply with NEPA's procedural requirements before lowering water levels in the Project's lakes and spraying aquatic herbicides in its canals. The district court held these activities did not violate NEPA because they were ongoing operations of a pre-NEPA project and thus not subject to NEPA.

▪ This claim is not ripe for judicial review. NEPA does not authorize a private right of action. We review agency actions under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988). The agency action must be final. 5 U.S.C. § 704. Review is limited to final administrative decisions to avoid interfering with the agency's decision making process. *Winter v. California Medical Review, Inc.,* 900 F.2d 1322, 1325 (9th Cir.1990). The water level and herbicide claims do not meet the finality requirement.

■ Because NEPA does not apply retroactively, ongoing operations of a pre-NEPA project, such as maintaining water levels in the lakes and spraying herbicides in the canals of the Klamath Irrigation Project, are not subject to NEPA unless, after NEPA became law, they underwent "changes which themselves amount to 'major Federal actions.' " [1] *See Upper Snake River v. Hodel,* 921 F.2d 232, 234 (9th Cir.1990) (citation omitted). There is no evidence the Bureau has ever considered or decided whether NEPA applies to the ongoing water level and herbicide operations involved in this suit,[2] or evidence that the Council requested the Bureau to consider the question and the Bureau refused. We can only speculate as to the Bureau's final position.[3]

The Bureau, not the court, is in the best position to marshal the facts necessary to determine initially whether such continuing operations have undergone changes amounting to "major federal action." Judicial intervention would deprive the Bureau of the opportunity to determine its final agency position and frustrate the agency's decision-making process. *See Winter,* 900 F.2d at 1325 (the "court must give the agency an opportunity to formulate a final position" before intervening); *Trustees for Alaska v. Hodel,* 806 F.2d 1378, 1381 (9th Cir.1986) (ripeness doctrine is intended to prevent premature judicial intervention in abstract disagreements). Moreover, the Bureau may decide these ongoing operations have undergone such changes as to require NEPA compliance, and by complying may make judicial intervention unnecessary.

The Tenth Circuit addressed a similar situation in *Grand Canyon Dorries, Inc. v. Walker,* 500 F.2d 588 (10th Cir.1974). The court held a challenge to the ongoing operations of a dam that was constructed and operated prior to the enactment of NEPA was not ripe for review because the agency had not made a decision regarding NEPA's applicability. As the court noted, allowing the agency to make the initial decision as to NEPA's applicability is consistent with NEPA's objective of insuring consideration of environmental impacts in the agency's decision making process. *Id.* at 589–90.

## II.

■ In 1992, the Bureau dredged a silted-up channel between the eastern and western lobes of Clear Lake to allow water from the eastern lobe to flow to the western lobe for release for irrigation. The Bureau implemented a salvage operation to save sucker fish that did not escape to the western lobe. The Bureau also attempted to salvage fish stranded in drained irrigation canals, in part by transporting them to hatcheries. The district court held the dredging and sucker salvage operations were categorically excluded from NEPA.

The Council's claims based on the dredging and sucker salvage operations are moot. We lack jurisdiction over a claim "to which no effective relief can be granted." *Headwaters, Inc. v. Bureau of Land Management,* 893 F.2d 1012, 1015 (9th Cir.1989). The question is not whether the precise relief the Council sought when filing its action is still available, but whether any effective relief might be available. *Id.* The Bureau completed the dredging activity in 1992 and is not considering further dredging. The channel is once again under water. *See id.* at 1015–16 (claim for declaratory relief moot where challenged activity too remote and speculative to have adverse effect on existing interests of the parties); *Friends of the Earth, Inc. v. Bergland,* 576 F.2d 1377, 1379

1. The issue is " 'not whether the actions are of sufficient magnitude to require [NEPA compliance], but rather whether NEPA was intended to apply at all to the continuing operations of completed facilities.' " *Upper Snake River,* 921 F.2d at 235 (quoting *County of Trinity v. Andrus,* 438 F.Supp. 1368, 1388 (E.D.Cal.1977)).

2. The Bureau's attorney's statement that NEPA does not apply to the ongoing operations of a pre-NEPA project, made during the course of litigation and in response to the Council's statement of its intent to add NEPA claims to the complaint, is not a definitive statement of the Bureau's position.

3. We reject the Council's assertion that the listing of the fish as endangered species is sufficient to constitute a change in the Bureau's operations resulting in "major Federal action." In *Upper Snake,* our analysis focused on a change in the ongoing operations, not the injury to the fishery caused by the ongoing operations. *See* 921 F.2d at 235.

(9th Cir.1978) ("Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot.").

Nor is the challenged action "capable of repetition yet evading review." *See Headwaters,* 893 F.2d at 1016. There is no reasonable expectation that further dredging will occur.[4] In the event the Bureau decides to dredge the channel again, the Council may seek a stay pending appeal to permit a judicial determination prior to further dredging. *See id.*

### III.

█ The district court held salvaging the sucker fish from the drained irrigation canals and transporting some of them to hatcheries was activity categorically excluded from NEPA. We agree.

█ Agency action mandated by statute does not trigger NEPA coverage. *See Pacific Legal Foundation v. Andrus,* 657 F.2d 829 (6th Cir.1981) (NEPA compliance not required where agency had a mandatory duty to list endangered species under the Endangered Species Act); *South Dakota v. Andrus,* 614 F.2d 1190, 1193 (8th Cir.1980) (issuance of a mineral patent not subject to NEPA because a "nondiscretionary act").[5] The Bureau was required by the Fish and Wildlife Service to undertake the salvage operation as part of the Bureau's compliance with the Endangered Species Act.[6]

DISMISSED IN PART; AFFIRMED IN PART.

---

**4.** The water level rarely drops to a level allowing dredging of the channel. The last instance of such low levels occurred during the 1930's.

**5.** Because we dismiss the majority of the Council's claims and affirm the remaining claim, we need not decide the Council's claim that the district court erred by determining the Council's affidavits contained "conclusory statements of law by non-lawyers," which failed to raise an issue of material fact.

**6.** In several of its biological opinions issued to the Bureau, the Fish and Wildlife Service included incidental take statements requiring the Bureau to follow its recommendations, one of which was to salvage stranded fish by transporting them to other waters. *See, e.g.,* Biological Opinion at 20 (August 14, 1991); Biological Opinion at 40–41 (July 22, 1992). These requirements were mandatory for the Bureau. *See, e.g.,* Biological Opinion at 19 (August 14, 1991) ("The measures described below are non-discretionary, and must be undertaken by the agency."); Biological Opinion at 40 (July 22, 1992) (same).

